## HARTFIELD *vs.* ROPER & NEWELL.

Where a *child* of such tender age as not to possess sufficient discretion to avoid danger, is permitted by his parents to be in a *public highway* without any one to guard him, and is there run over by a traveller and injured, neither *trespass* or *case* lies against the traveller, if there be no pretence that the injury was *voluntary* or arose from *culpable negligence* on his part.

In an action for such injury, if there be *negligence* on the part of the plaintiff there cannot be a recovery ; and although the child, by reason of his tender age, be incapable of using that ordinary care which is required of a discreet and prudent person, the want of such care *on the part of the parents or guardians* of the child furnishes the same answer to an action by the child, as would its omission on the part of the plaintiff in an action by an adult.

The same rule, *it seems,* would apply in an action by a *blind* or *deaf* man, or a person *non compos,* who, under similar circumstances, received an injury on a public highway.

For an injury to a child of the most tender age, an action may be brought in the name of the child. In *England* it seems it *must* be so brought, and that an action cannot be sustained in the name of the *parent ;* whether that be the rule here, *quere.*

THIS was an *action on the case,* tried at the Oneida circuit in May, 1838, before the Hon. ROBERT MONELL, one of the circuit judges.

The suit was brought by the plaintiff William Hartfield, *by his next friend*, Gabriel Hartfield, for an injury sustained by being run over, as alleged, by the defendants, with a sleigh and horses, and having his arm broken. In March, 1836, the plaintiff, a child then of *about two years of age*, was standing or sitting in the beaten track of a public highway, and no person near him; the defendant *Roper* was driving a sleigh and horses upon the same road, and before the child was perceived the horses passed over him. He was discovered by Newell, the other defendant, who was in the same sleigh, and on his exclaiming that a child had been run over, the horses were immediately stopped by Roper and backed, and the sleigh prevented from passing over the child. The injury sustained was very serious; an arm of the child was broken, and he suffered greatly for about two months, and considerable expense was incurred in medical attendance. The sleigh was at the time of the injury descending a hill, at the foot of which was a bridge, and the child was in the road about 6 or 8 rods from the bidge. The course of the road was such that in descending the hill there was a fair view of the road beyond the bridge. A daughter of the defendant Newell, who was in the sleigh with her father, testified, however, that she did not perceive the child, although she sat on the side of the sleigh which passed over the track in which was the child. The defendant Roper had no sleigh bells. The horses at the time of the injury were trotting, but not at great speed; Roper sat on the front seat of the sleigh driving the horses, and Newell and his daughter sat on the back seat. The parties in the sleigh were not conversing at the time of the accident. The horses and sleigh *belonged* to *Newell*, but were *let* together with a farm and other property to *Roper*, for a term not expired at the time of the accident. It was proved that *Newell* was esteemed *to* be worth $10,000. Upon the above facts the defendant's counsel moved for a *nonsuit*, which the judge refused to grant. A motion was also made that the jury should be instructed to acquit Newell on the ground that there was no evidence against him, so that he might be improved as a witness for Roper; which the judge refused to do. The

Hartfield v. Roper.

jury, under the charge of the judge, found a verdict against both defendants, with *five hundred dollars* damages. The defendants asked for a new trial.

*J. A. Spencer*, for the defendants.

*W. Tracy & W. C. Noyes*, for the plaintiff.

*By the Court*, COWEN, J.   The injury to this child was doubtless a very serious misfortune to him.   But I have been utterly unable to collect, from the evidence, any thing by which the jury were authorized to impute such carelessness as rendered these defendants responsible.   It is true, they might have seen the child from the turn of the road in descending, had they looked so far ahead ; but something must be allowed for their attention to the management of the horses and their own safety in descending the hill to a bridge.   So unobserving were they in fact, that Mrs. Lewis, who sat in the rear of the sleigh, on the left side, and therefore in the best position of the three to overlook the road in its full extent, as far as the place where the child was, did not discern him.   It was somewhat severe, in a case like this, to allow testimony of Newell's ability to pay, though it was not objected to.   It seems to imply that he had been so brutal as silently to allow Roper's going on and endangering the child's life, after he, Newell, had discovered it to be in the road.   But, perhaps, no objection can now be heard to that evidence having been received, because it was not made at the trial.

No doubt the action was properly brought in the name of the child.   Nor is there any objection to its form, since the statute.   2 R. S. 456, § 16, 2d ed.   Nor could the father have brought an action for loss of service, in respect to so small a child, according to the English case of *Hall* v. *Hollander*, 4 Barn. & Cress. 660 ; though I should think it quite questionable whether that case can be considered as law here.   If the defendants were, in truth, so reckless of the child's safety, as to run over it, in the way described after knowing it to be in the road, the verdict is none too

large　But such trifling with human life ought not to be presumed; and there was no proof of it, either direct or circumstantial.　This is not a case, however, for interfering upon the ground of excessive damages.

The only question which seems to be open for our consideration is, that of negligence.　This respects both parties. It is quite necessary to drive at a moderate pace, and look out against accidents to children and others, in a populous village or city.　See *M'Allister* v. *Hammond*, 6 Cowen, 342, and per Lawrence, J. in *Leame* v. *Bray*, 3 East, 597.　But this accident happened in the country, where was a solitary house; a child belonging to it happened to be in the road, a thing most imprudently allowed by its parents, and what could have been easily prevented by ordinary care.　Travellers are not prepared for such things.　They, therefore, trot their horses.　They are warrantably inattentive to small objects in the road, which they may be incapable of seeing in the course of a drive for miles through the country, among a sparse population.　To keep a constant look out, would be more than a driver could do, even if he were continually standing and driving on a walk. Yet to this the matter must come, if he is to take all the responsibility.　The roads would thus become of very little use in the line for which they were principally intended.　It seems to me, that the defendants exercised all the care which, in the nature of this case, the law required.　If so, it is a case of mere unavoidable accident; for which they are not liable.　*Dygert* v. *Bradley*, 8 Wendell, 469, 472, 473.　*Clark* v. *Foote*, 8 Johns. R. 421. *Penton* v. *Holland*, 17 id. 92.

Was the *plaintiff* guilty of negligence?　His counsel seemed to think he made a complete exception to the general rule demanding care on his part, by reason of his extreme infancy.　Is this indeed so?　A snow path in the public highway, is among the last places in this country to which such a small child should be allowed to resort, unattended by any one of suitable age and discretion.　The custody of such a child is confided by law to its parents, or to others standing in their place; and it is absurd to imagine that it could be exposed in the road, as this child was, with-

Hartfield v. Roper.

out gross carelessness. It is the extreme of folly even to turn domestic animals upon the common highway. To allow small children to resort there alone, is a criminal neglect. It is true that this confers no right upon travellers to commit a *voluntary injury* upon either ; nor does it warrant *gross neglect ;* but it seems to me that, to make them liable for any thing short of that, would be contrary to law. The child has a right to the road for the purposes of travel, attended by the proper escort. But at the tender age of two or three years, and even more, the infant cannot personally exercise that degree of discretion, which becomes instinctive at an advanced age, and for which the law must make him responsible, through others, if the doctrine of mutual care between the parties using the road is to be enforced at all in his case. It is perfectly well settled, that, if the party injured by a collision on the highway has drawn the mischief upon himself by his own neglect, he is not entitled to an action, even though he be lawfully in the highway pursuing his travels, *Rathbun* v. *Payne*, 19 Wendell, 399, *Burcle* v. *N. Y. Dry Dock Company*, 2 Hall, 151, which can scarcely be said of a toppling infant, suffered by his guardians to be there, either as a traveller or for the purpose of pursuing his sports. The application may be harsh when made to small children, as they are known to have no personal discretion, common humanity is alive to their protection ; but they are not, therefore, exempt from the legal rule, when they bring an action for redress ; and there is no other way of enforcing it, except by requiring due care at the hands of those to whom the law and the necessity of the case has delegated the exercise of discretion. An infant is not *sui juris.* He belongs to another, to whom discretion in the care of his person is exclusively confided. That person is keeper and agent for this purpose ; and in respect to third persons, his act must be deemed that of the infant ; his neglect, the infant's neglect. Suppose a hopeless lunatic suffered to stray by his committee, lying in the road like a log, shall the traveller, whose sleigh unfortunately strikes him, be made amenable in damages ? The neglect of the committee to whom his custody is confided

shall be imputed to him. It is a mistake to suppose that because the party injured is incapable of personal discretion, he is, therefore, above all law? An infant or lunatic is liable personally for wrongs which he commits against the person and property of others. *Bullock* v. *Babcock*, 3 Wendell, 391, 394. And when he complains of wrongs to himself, the defendant has a right to insist that he should not have been the heedless instrument of his own injury. He cannot, more than any other, make a profit of his own wrong. *Volenti non fit injuria.* If his proper agent and guardian has suffered him to incur mischief, it is much more fit that he should look for redress to that guardian, than that the latter should negligently allow his ward to be in the way of travellers, and then harrass them in courts of justice, recovering heavy verdicts for his own misconduct.

The counsel for the plaintiff probably have the advantage of saying that the neglect of an infant has not, in any reported case, ever been allowed by way of defence in an action for negligently injuring him. But so far, there is an equal advantage on the other side. The defence has not been denied in any book of reports. The defendant has also another advantage. The reports expressly say that negligence may be predicated of an infant or lunatic. All the cases agree that trespass lies against an infant. That was adjudged in *Campbell* v. *Stakes*, 2 Wendell, 137, and *Bullock* v. *Babcock*, before cited. And it is equally well settled that where an injury is free from all negligence, as if it arise from inevitable accident, there trespass does not lie. *Weaver* v. *Ward*, Hob. 134. Marcy J. in *Bullock* v. *Babcock*, 2 Wendell, 393. *Dygert* v. *Bradley*, before cited. The cases maintaining trespass against an infant, therefore, imply that he may be guilty of negligence. Trover will also lie for a mere non-feasance, e. g. a non-delivery of goods, where they do not come to the infant's hands by contract. Lawrence, J. in *Jennings* v. *Rundall*, 8 T. R. 337. *Campbell* v. *Stakes*, 2 Wendell, 143. The cases most favorable to infants all agree in that. And so, where the contract of bailment to an infant has expired, it was agreed that, on

Hartfield v. Roper.

non-delivery, the owner may maintain detinue, replevin, or trover. *Penrose* v. *Curren*, 3 Rawle, 351. And see per Rogers, J. id. 354. It was said trespass lies against an infant though only four years of age: 25 Hen. 6, 11 *b*. per Wangford, though this is put by Brook with a *quere*. Br. Abr. Corone, pl. 6. No doubt, however, he may bring a suit at any age; and if that suit depends upon a condition on his side, he must show that it was performed. It was said in *Stowell* v. *Zouch*, Plowd. Com. 364, if an infant lord, who has title to enter for mortmain, does not enter within the year, he shall be bound by his laches; " for there he had but title to a thing which never was in him." To warrant an action he must have entered within the year; and not having done so, he could have no remedy. Several like instances are put in the same page, which are also collected and arranged in 9 Viner's Abr. Enfant, (B. 2,) pl. 7, 8, p. 376, of the octavo ed. But it is plain in the nature of things, that, if an infant insist on a right of action, he must show a compliance with the conditions on which his right is to arise and this is entirely irrespective of his age. Land descends to an infant of a year old; and he is bound to make a share of the partition fence. He neglects to do so, whereby his neighbor's cattle enter and trespass upon the land. No one would think of contending that his neighbor, must, therefore, be deprived of his defence. The infant has neglected to fulfil the condition, on which he could sue, or his guardian has done so, which is the same thing. He might as well sue because his neighbor had left a gate on his own premises open, through which the infant had crept, and fallen into a pit and hurt himself. The man has a right to keep his gate open; and the child's parents must keep him away. But one has no plainer right to walk about his own premises, and open and shut his own gates, than he has to travel in the highway with his horses. An infant creeps into the track from your field to your barn, and is injured by your driving a load of hay along the path, are you to be deprived of all excuse in an action for the injury?

The argument for this plaintiff goes quite too far and proves too much. It was said that drivers are bound to suppose that small children may be in the road, and as all the care lies on the side of the former, damages follow of course for every injury to the latter. Suppose an infant suddenly throws himself in the way of a sleigh, a waggon or a rail road car, by which his limb is fractured; it may be said with equal force, he is incapable of neglect. So if he be allowed to travel the road alone in the dark. The answer to all this is, the law has placed infants in the hands of vigilant and generally affectionate keepers, their own parents; and if there be any legal responsibility in damages, it lies upon them. The illustration sought to be derived from the law in respect to the injury of animals turned or suffered to stray into the street, does not strike me as fortunate. If they be there without any one to attend and take care of them, that is a degree of carelessness in the owner which would preclude his recovery of damages arising from mere inattention on the side of the traveller. Indeed, it could rarely be said that animals entirely unattended are lawfully in the roads or streets at all. They may be driven along the road by the owner or his servants; but if allowed to run at large for the purpose of grazing, or any other purpose, entirely unattended, and yet travellers are to be made accountable in all case of collision, such a doctrine might supersede the use of the road, so far as comfort or expedition is concerned. The mistake lies in supposing the injury to be wilful, to arise from some positive act, or to be grossly negligent. Such an injury is never tolerated, be the negligence on the side of the party injured what it may. *Clay* v. *Wood*, 5 Esp. R. 44. *Rathbun* v. *Payne*, before cited. But where it arise from mere inadvertence on the side of the traveller, he is always excused by the law on showing that there was equal or greater neglect on the side of his accuser. It is impossible to say, then, that the accuser was not himself the author of the injury which he seeks to father upon another. My difficulty in the case at bar is to find the least color for imputing gross negligence, or indeed any degree of negligence to the defendants. But if there were

Hartfield v. Roper.

any, there was, I think, as much and more on the side of the plaintiff.

It therefore seems to me, that here was a good defence established at the trial, on the ground that the defendants being free from gross neglect, and the plaintiff being guilty of great neglect on his part, indeed being unnecessarily, not to say illegally occupying the road, having no right there, (for he does not appear to have been travelling, nor even on the land which belonged to his family,) the injury was a consequence of his own neglect, at least such neglect as the law must impute to him through others.

Again; I collect from the evidence that Newell had demised the team for a term of two years, which was unexpired at the time of the injury, to his son-in-law and co-defendant Roper. Newell then had no control of the team, and cannot be made liable without proof of positive and active concurrence in the injury, a thing for which there is no pretence in the proof, and which implies a barbarous temper, which the law cannot presume in any one. He, at least, should have been acquitted by the jury. He neither actually participated in the management of the team, nor could his interference have been legally efficient to prevent mischief. He had no lawful control of the horses. Roper was the exclusive owner *pro hac vice.*

The evidence, at the time when the motion was made to allow the jury to pass upon the case of Newell, had made out nothing actual against him, if Roper, the driver, may be said to have been implicated as a wrong-doer. But Newell might, at this stage, perhaps have been regarded by the jury as owner of the horses, and Roper as his servant. The lease was not in proof. Constructively, his liability would follow from the neglect of his servant; and in this view it cannot be said there was no evidence against him. It is only where the evidence totally fails as to one whose case can be separated from the other, that he is entitled to be acquitted for the purpose of being sworn as a witness for his co-defendant.

The motion for a nonsuit, which followed, seems to have been the more proper one; for I have been utterly unable

to see that, so far, the evidence had made out any neglect, or the semblance of neglect on the part of the defendants, while it had established clear neglect on the other side. But this question has been sufficiently dwelt upon in connection with the defendant's proofs, and that which the plaintiff adduced at the close of the cause. It was enough, if the cause of action was then made out, although the judge might have refused to nonsuit. It appears to me it was not.

It follows that a new trial should be granted. The costs should, I think, abide the event; for the judge erred in omitting to nonsuit the plaintiff. The case was certainly not made better for the plaintiff by the subsequent evidence. It is not, therefore, *merely* the case of a verdict against the weight of evidence, which calls for payment of costs.

New trial granted ; costs to abide the event.