CHARLES MOWREY, an infant, by his guardian, *vs.* THE CENTRAL CITY RAILWAY.

The plaintiff, an infant of the age of thirteen years, wishing to get upon a passing horse car of the defendant, to ride home, hailed the car, and started toward the front platform, which was full of passengers. Just then some one (the plaintiff thought it was the driver) spoke in a quick, sharp way, and told him to get on at the rear end. He went to the rear end, and stepped upon the step, when some person, standing there, told him, in an authoritative tone, to go to the front end, and get on. The plaintiff started, again, for the front end, and ran along by the side of the car, the horses trotting slowly, at the time. The snow had been shovelled from the track, and thrown on either side of it, so that there was a descent to the rails, and was hard and slippery. As he ran along towards the front, over this icy surface, the plaintiff slipped and fell, and his leg passing in front of the forward wheel of the car, was crushed to pieces. There was no conductor on the car.

*Held,* 1. That the defendant was guilty of negligence in causing the injury.

2. That there was no negligence imputable to the plaintiff in doing the act which led to the injury, to wit, running from the rear of the car to the front, to get on; the cause of his falling being the dangerous embankment in the street, created by the defendant, without the plaintiff's knowledge.

3. That the defendant, having without right, put such embankment in the street, must show, in order to charge negligence upon any person injured by it, that he knew of it, yet knowing it, used no care to prevent injury.

4. That, at all events, the question of the plaintiff's contributory negligence should have been submitted to the jury.

Negligence may be considered as composed of two elements: 1st. Of the acts done or omitted; and 2d. The capacity of the person, morally, intellectually and physically, to whom negligence is imputed.

It consists in doing that which duty, or common prudence and caution, forbid

to be done, or the omission to do that which, under the circumstances, prudence and caution require to be done, to prevent loss or injury.

A person desiring to get upon a train drawn by a locomotive may, without the imputation of negligence, run by the side of it, when in motion, if he keep far enough from it, so as not to expose himself to injury. Much more safely may he do this by the side of a street car drawn by horses.

In determining whether a party is, or is not, chargeable with negligence, regard must be had to his moral, intellectual and physical capacity.

A man of full age and consequent maturity of judgment, will be presumed to act with care and caution proportioned to the emergency, and the necessity for their exercise; one of less age and experience might act very differently. And while the capacity of a person is not directly the subject of examination, yet, so far as it may be presumed or inferred from age, it is proper to take it into consideration. *Per* MULLIN, J.

All plaintiffs, in actions for injuries resulting to them from negligence, who are adults, and all persons mentally and physically incapable of taking care of themselves, stand on the same level, and cannot recover if they, or those under whose care they are, have been guilty of negligence contributing to the injury.

While persons not of full age cannot be held to the same degree of care and caution as adults, they are nevertheless bound to exercise so much as they are capable of doing. They may not recklessly rush into visible danger and hold the one who produced the danger responsible for injuries which they were able to avoid.

If a plaintiff, not of full age, has acted, in a given case, as carefully and as prudently as one of his age could reasonably be expected to do, he has done all that can, in justice, be required of him.

Negligence is not, ordinarily, criminal, yet it implies culpability—an intentional disregard or violation of the duties due to others. And it should not be imputed, unless there is capacity to perform the duty under the circumstances surrounding the person at the time the duty devolves upon him.

In the case of an adult, the law, in determining whether his conduct, on a given occasion, was negligent, makes allowance for the infirmity of his nature, and relieves him from all effects of negligence when the circumstances were such as to deprive him, for the time, of the ordinary influence of reason and judgment upon his conduct, and throws the whole responsibility upon the person by whose act or neglect such a state of mind was caused. *A fortiori* should the same rule be applied to those of less age, experience, coolness and judgment.

THIS action was brought by the plaintiff, a minor of the age of thirteen years, by his guardian, to recover damages for an injury done to his leg by one of the cars of the defendant while running along its track

in Salina street in the city of Syracuse. The plaintiff was sent by his father to a druggist, for medicine, and after procuring it he went into the street in order to get on a passing car, to ride home. He hailed the car and started toward the front platform, to get on. Just then some one (the boy thought it was the driver) spoke in a quick, sharp way, and told him to get on the rear end. He went to the rear end, and stepped on to the step, when some one standing there told him, in an authoritative tone, to go to the front end and get on. The plaintiff started again for the front end, and ran along by the side of the car. The snow had been shovelled out of the track and thrown on either side of it, so that there was a descent to the rails, and it was hard and slippery. As he ran along toward the front, over this icy surface, he slipped and fell, and his leg passed in front of the forward wheel, and was crushed to pieces. When the plaintiff first hailed the car, the horses were going on a trot, and when he was going from the rear to the front of the car they were trotting slowly. The front platform was full of passengers, when the plaintiff tried to get on. There was no conductor on the car. The plaintiff had traveled on the defendant's cars before this time, and at such times there was always a conductor on the car.

The court nonsuited the plaintiff, on the ground that he had been guilty of negligence which had contributed to the injury, and hence was not entitled to recover.

The motion for a new trial was ordered to be heard, in the first instance, at the General Term.

*Mr. Kennedy*, for the plaintiff.

*Mr. Wallace*, for the defendant.

*By the Court*, MULLIN, J. The right of recovery in this case rested on two facts, the proof of which devolved

on the plaintiff. These were : 1st. That the defendant was guilty of negligence, which caused the injury ; and 2d. That the plaintiff was not guilty of any negligence that contributed to such injury.

It was not claimed, on the trial, nor is it on this appeal, that there was any doubt as to the negligence of the defendant. The nonsuit was put upon other and different grounds; so that the first fact essential to a recovery was established.

The learned judge at the circuit was of the opinion that there was evidence of negligence on the part of the plaintiff, which contributed to the injury, so clear and conclusive in its character as to relieve him from the duty of submitting the question to the jury.

Negligence may be considered as composed of two elements : 1st. Of the acts done or omitted ; and 2d. The capacity of the person, morally, intellectually and physically, to whom negligence is imputed.

Let us then, in the first place, ascertain whether the conduct of the plaintiff, at the time of the injury, was in fact or in law negligent.

Negligence consists in doing that which duty or common prudence and caution forbid to be done, or the omission to do that which, under the circumstances, prudence and caution require to be done, to prevent loss or injury.

What did the plaintiff do that he ought not to have done, or omit to do that he should have done, under the circumstances in which he was placed ? He was in the exercise of an undoubted right, when he attempted to get on the car. To do so, he went to the forward end of the car, and was told by the driver to go to the rear end. In this he incurred no risk of injury, as it does not appear that he approached near enough to the car to expose himself to danger. On getting to the rear end, he got on to the lower step, while the car was in motion. If he had then fallen under the wheel, or been otherwise

injured, it would have been caused in part by his own negligence ; but he got on and got off without injury, so that his negligence in getting on was utterly harmless, and had nothing whatever to do with what subsequently occurred. The plaintiff being ordered by some one to go to the forward end, to get on, he got off and started for the front. It does not lie with the defendant to complain that the plaintiff obeyed the order of some unauthorized person when he got off the rear and started for the front. Having failed to have a conductor on the car it was impossible for a person desiring to get on to know whether the person assuming to give orders had or had not authority. The act of going to the front to get on was in itself entirely harmless, unless he passed near enough to the car to be struck, or the road was such that he was liable to slip and fall under the car, or otherwise to be injured. He was not near enough to the car to be hurt by it while it was in motion, as he was not thus hurt; so that if his running along at the side of the car was negligence, it did not contribute to the injury. The part of the road over which he passed was slippery, and in the act of passing to the front he fell and was hurt. The negligent act, if any, attributable to the plaintiff, was in running at the side of the car while in motion, over a slippery part of the road, by reason whereof he fell and was hurt. It does not appear that the act of running along by the side of the car, unless near enough to expose himself to injury, was negligent. A person desiring to get on to a train drawn by a locomotive may, without the imputation of negligence, run by the side of it, when in motion, if he keep far enough from it, so as not to expose himself to injury. Much more safely may he do this by the side of a street car drawn by horses.

The slipperiness of the street near the track was the direct cause of the fall and consequent injury. The snow had been shovelled away from the rails and thrown

upon each side of the track, and had doubtless been beaten down and rendered slippery, by the action of the sun, rain and travel, so that there was a sort of bank on each side, parallel to the rails, with a descent toward the track. The plaintiff was in a public highway, over every part of which he had the right to conclude he could travel in safety, at all hours of the day and night. He was not in fault because he ran over this ground, made slippery by the defendant, unless he had knowledge of its condition. He had the right to conclude it was free from any artificial impediments, and that it was throughout its whole length, safe for travel by foot passengers. Before he could be required to avoid danger in the public highway, he must have had knowledge that there was a danger to be avoided. It does not appear that he knew of this embankment on either side of the track. The defendants had no right to put it there ; but having put it there, they must show, in order to charge negligence upon any person injured by it, that he knew of it, yet, knowing it, used no care to prevent injury. Suppose the plaintiff had been traveling along the street without any intention of getting on to the cars, and had slipped, fallen and broken his leg, could negligence have been imputed to him ? Would not the injury have been directly caused by the unlawful piling of snow in the street ?

If, while the plaintiff was passing from one end of the car to the other, he had slipped upon this icy ridge, fallen and broken his limb, could it be said that he was guilty of negligence ? He was rightfully in the highway for a lawful purpose, and unknown to him a bank of snow had been piled up in the street which it was unsafe to travel upon, and he fell. If the street had been in as good condition for travel as it would have been had not the snow been piled along on the sides of the track, and the defendant had slipped and fallen and been injured, it is possible that it might have been said, with

Mowrey v. Central City Railway.

some show of reason, that he was chargeable with negligence. But I doubt it, even in that case, unless it also appeared that he was passing so near to the car that he must have known that if he slipped, he might go under the wheels.

It is said that it was the plaintiff's duty to have waited until the car stopped, before attempting to get on. This was doubtless the safest course, as it ordinarily is, for a man to sit instead of standing—to walk instead of running or riding—or to stay at home instead of traveling; but men must incur some risks, in order to get along through life, and they are blamable for incurring dangers only when they cease to be reasonably prudent and cautious. But the answer to the suggestion is, that nothing that the plaintiff did towards attempting to get on to the car, prior to passing from the rear to the front of the car, however negligent, had anything whatever to do in producing the injury. And it is wholly immaterial how negligent he may have been on one or many occasions during the time he was endeavoring to get on to the cars, if such negligence was not contributory to produce the injury. (*Haley* v. *Earle*, 30 *N. Y.* 208.)

I am of the opinion that there was no negligence imputable to the plaintiff in doing the act which led to the injury, to wit, running from the rear to the front of the car, to get on, for the reason that the defendant had, unknown to the plaintiff, created a dangerous embankment in the street, which was the cause of his falling. He was rightfully in the street—had the right to assume it was safe—and as it does not appear that the injury would have been sustained by the plaintiff, in passing from one end of the car to the other, if the street had been in a safe condition, I do not think there was any negligence imputable to the plaintiff which contributed to the injury.

2d. In determining whether a party is or is not charge-

able with negligence, regard must be had to his moral, intellectual and physical capacity. It is not meant by this to say that when there is a want of either moral, intellectual or physical capacity, the one who is deficient may not be chargeable with negligence; but what is intended is, that in determining whether the conduct of a person is or is not negligent, regard must be had to the age and capacity of the person whose conduct is the subject of examination. Capacity, up to manhood, is properly measured by the years a person has lived, the intellectual and moral man maturing with the physical. A man of full age and consequent maturity of judgment will be presumed to act with care and caution proportioned to the emergency, and the necessity for their exercise. One of less age and experience might act very differently; and while the capacity of a person is not directly the subject of examination, yet so far as it may be presumed or inferred from age, it is proper to take it into consideration.

It was held, in *Lynch* v. *Nurdin*, (41 *Eng. Com. Law Rep.* 422,) that the plaintiff, a child under seven years of age, was not prevented from recovering damages for the breaking of his leg through the negligence of the defendant. The facts were these: The defendant was the owner of a horse and cart, which were in charge of a servant, in a street in London. The servant left them standing in the street, unfastened, and not in charge of any one. The plaintiff and other children, of about the same age, got into the cart, and while the plaintiff was trying to get out over the shaft, another of the children took hold of the horse and moved him a short distance, whereby the plaintiff fell from the cart, and the wheel passed over his leg and broke it. The defence was that the negligence of the plaintiff contributed to the damage, and hence he could not recover. But Denman, C. J., delivering the opinion of the court, says: "the plaintiff merely indulged the natural in-

stinct of a child in amusing himself with the empty cart and deserted horse, and the defendant cannot be permitted to avail himself of that fact. The most blameable carelessness of the servant having tempted the child, he ought not to reproach the child with yielding to the temptation. He has been the real and only cause of the mischief. * * The child, acting without prudence or thought, has however shown those qualities in as great a degree as he could be expected to possess them." The rule to show cause why the verdict should not be set aside and a new trial granted was discharged.

There are several other cases in England, in which the same principle has been upheld. Indeed the law of that country is that in an action for damages caused by negligence, the concurring negligence of the plaintiff, if a child of tender years, is not a defence.

The Supreme Court of Connecticut held this to be law in *Birge* v. *Gardner*, (19 *Conn. Rep.* 507.) But the Supreme Court of this state, in *Hartfield* v. *Roper*, (21 *Wend.* 615,) repudiated the English doctrine on this subject, and held that a child of two years old, who was injured by the defendant who ran over it with his sleigh and horse, while it was sitting in the traveled part of the highway, could not recover damages for such injury ; that although it was not in itself chargeable with negligence, yet it was chargeable with the negligence of its parents in permitting it to be in the highway without an attendant to watch over and protect it.

This case has been followed in several other cases, and is now to be taken to be the law of the state.

Idiots, lunatics and persons physically incapable of taking care of themselves are held to be within the same principle, and chargeable with the negligence of those who have charge of them. ( *Willetts* v. *The Buffalo and Rochester R. R. Co.*, 14 *Barb.* 585. *Hartfield* v. *Roper*, *supra*.)

We must take the law to be that all plaintiffs in actions

for injuries resulting to them from negligence, who are adults, and all persons mentally and physically incapable of taking care of themselves, stand on the same level, and cannot recover if they, or those under whose care they are, have been guilty of negligence contributory to the injury.

There is a very large class of persons who are neither adults nor mentally nor physically incapable of taking care of themselves, and of which the plaintiff is one ; and the question is, whether they are bound by the same rule, or whether in determining the question of negligence their age and capacity are not legitimate subjects of inquiry.

We all know that children between the ages of eight and eighteen years, have neither maturity of judgment, the experience, nor the coolness in danger, which persons of full age are accustomed to have and exercise. These qualities are essential to their protection from injury ; and those having them in the greatest perfection are most likely to avoid danger, and when it comes, to do what may be necessary to lessen the injurious consequences which may result from it. These persons cannot judge accurately—cannot act coolly and deliberately amid danger or excitement, nor have the experience which is required to fit them to meet the dangers of life. Yet if they are within the rule, and are held bound to exercise the same care, caution and prudence of persons of full age, they are required to do what it is literally impossible for them to do, or they are left at the mercy of the careless and reckless, without any protection whatever. A lad of twelve years of age finds himself on a street covered with railroad tracks, over which trains are passing and repassing, bells ringing, and locomotive whistles blowing, together with all other elements of noise and excitement usual at such a place. He becomes confused and alarmed, and in his efforts to escape he rushes in the very path of a passing engine

Mowrey *v.* Central City Railway.

and is injured. Is the conduct of this boy, under these circumstances, to be measured by the same rule that would and should be applied to a man of mature years? The one might be cool enough to reason that standing still was the course of safety and prudence ; or he might attempt to pass across the track of a train far enough from him to afford him an apportunity to cross in safety. The boy may be as cool as the man, but experience is wholly at war with such a conclusion.

But while they cannot be held to the same degree of care and caution as adults, they are nevertheless bound to exercise so much as they are capable of doing. They may not recklessly rush into visible danger and hold the one who produced the danger responsible for injuries which they were able to avoid. A jury of intelligent men can, without difficulty, determine whether a plaintiff not of full age acted in a given case, as carefully and as prudently as one of his age could reasonably be expected to do. If he has, he has done all that can in justice be required of him.

I am unable to find any case directly on the point under consideration. I find none against it. Courts and judges have, on sundry occasions, recognized the reasonableness of it, and in some cases it has been recognized and approved.

Infants, lunatics and idiots are liable for injuries done by them, precisely as adults and persons *compos mentis* are. The party injured can only recover for the damages actually sustained. Nothing can be recovered by way of smart money, as may be given by a jury against persons responsible for their acts. (*Hartfield* v. *Roper*, *supra.*)

But even in actions for tort, against infants, as in trover, the infancy of the defendant may be given in evidence, not for the purpose of a bar to the action, on that ground, but to give character to the act or conduct

which it is claimed constituted a conversion. (*Vasse* v. *Smith*, 6 *Cranch*, 226.) If an infant should obtain possession of a watch, or other article of property calculated to amuse or please it, and on demand it should refuse to deliver it up, would any court hold such a refusal to be evidence of a conversion? Yet it would be such, in the case of an adult.

So tender is the criminal law of the infirmities of childhood, that it holds a child incapable of committing a crime.

Negligence is not, ordinarily, criminal, yet it implies culpability—an intentional disregard or violation of the duties due to others. And it should not be imputed, unless there is capacity to perform the duty under the circumstances surrounding the person at the time the duty devolves upon him.

In *Drew* v. *The Sixth Avenue Railroad Co.* (26 *N. Y.* 49,) it was held that it was not negligent for a parent to permit a child of eight years of age to be in the streets without a protector. That was a much stronger case of negligence on the part of the child than is proved in this case. The child was eight years of age, and lived with, and did some slight service for, its mother. On the day of the injury it was at school, and while on its way to school, it approached a car of the defendant and made request to the driver, coming toward the car opposite the front platform, where the driver and brakeman stood. The latter beckoned him on, and when the boy got near enough he seized him by the collar, and tried to get him on to the platform, but the boy was too heavy, fell from his grasp, and the car passed over his foot and crushed it, so that amputation became necessary. The brakesman denied inviting the boy to the platform, but on the contrary he swore he made signals to him to keep away, but he nevertheless went forward, stumbled, and fell under the wheel, the witness trying

to save him. There was newly fallen snow on the ground; the car was not stopped or speed slackened. It was against the rules of the company to allow passengers to get on or off the front platform.

The judge charged the jury, among other propositions, that if the brakesman saw fit to intimate to the boy to come forward, and he followed that intimation, and then if, instead of stopping the car, he seized the person of the child, to lift him perforce upon the moving car, there could be no doubt but that it was negligence. The charge was approved by the Court of Appeals.

Now it will be seen, from this statement of facts, that in the case cited, as well as in the one before us, the child was endeavoring to get on to a car in motion; that he endeavored to get on the end which the regulations of the company forbade passengers to enter on, or get off from, and this at the request of the defendant's agent; and that while engaged in this attempt the injury occured. If there was no negligence on the part of the child, in the one case, how can it be said there was, in the other? Yet it does not appear to have been suggested that the action should fail because of the negligence of the child. It is to be observed that the action was for the loss of service of the child, and one question was whether the plaintiff was negligent in permitting a child of tender age to be in the streets; and it was held that she was not. Being rightfully in the streets without a protector, the mother was chargeable with whatever negligence contributory to the injury could be imputed to the child. But, I repeat, it was not suggested that any negligence was imputable to the boy. If the child was of such age that it ought not to be in the streets, and yet, without the fault or neglect of the mother, it had got into the streets and was injured, she would nevertheless be entitled to recover. As the child, in such case, could not be charged with negligence, by

reason of its tender years, the only negligence that could be inquired into was her own, and that of the defendant. (*Mangam* v. *Brooklyn City R. R Co.*, 36 *Barb.* 230.)

In answer to the suggestion of counsel in *Drew* v. *The Sixth Avenue R. R. Co.* (*supra*,) that it was negligence in the mother to permit a child of eight years of age to be in the street without an attendant, the court say: "It was not, as matter of law, negligent or any way improper for the plaintiff to send her son to school without an attendant. If the proposition were tenable at all, it was for the jury, and not the court, to pronounce it."

In *Mangam* v. *The Brooklyn City R. R. Co.* (*supra*,) the facts were, that the plaintiff was a child of four years of age, and while attempting to cross the street, in front of a car of the defendant, was knocked down, run over and hurt. The driver sat on the railing of the car, looking away from the horses, looking at a bird he held in his hand, the lines being tied to the brake of the car. It was in proof that the parents had done all they reasonably could to keep the child out of the street, but it had nevertheless got out and ran into the street, and was injured. EMOTT, J., delivering the opinion of the court, says: "The question of negligence, in such actions, is undoubtedly a question of law, upon an admitted or unquestioned state of facts. But whether, in a given case, the distance between an approaching vehicle and a passenger in a street, or the circumstances of either, are such that a particular movement might be prudently undertaken, and could, and but for misconduct would, probably have been effected without collision or injury, is often a mixed question of distances, conditions, the ability of the person and the speed of the movement of the vehicle, which must be left to a jury, with proper instructions.

In that case the plaintiff was nonsuited, and the Gene-

ral Term in the Second District granted a new trial, as well on the ground that the case should have been submitted to the jury, as on the further ground that it appeared that the driver was guilty of gross negligence, and in such case negligence on the part of the plaintiff could not excuse the defendant.

In the case of an adult, the law, in determining whether his conduct is negligent, makes allowance for the infirmity of his nature, and relieves him from all effects of his negligence when the circumstances are such as to deprive him, for the time, of the ordinary influence of reason and judgment upon his conduct, and throws the whole responsibility upon the person by whose act or neglect such a state of mind was caused.

In *McIntyre* v. *The New York Central R. R. Co.* (43 *Barb.* 532,) the plaintiff sued for the killing of one Mrs. Knight, upon whose estate he had taken letters. She was a passenger in the defendant's car, from Schenectady, going west. At Syracuse, the car in which she rode was detached from the train, and she and other passengers were ordered, by the brakesman, to go into the forward car. She started, and in passing from one car to the other, she fell between them and was killed. It was dark, at the time, and rained and froze. The train was in motion, when she started. It was insisted that she was guilty of negligence in going from one car to another when the train was in motion ; but the court say : "Being a woman, traveling with a very old man as an escort, she would naturally obey the commands of a person belonging to the road, and could hardly be called negligent in so doing." If her act was not negligent, how could the plaintiff in this case, a mere boy, be called negligent in obeying the orders of those he found assuming to control the car and his movements in getting on ?

The Court of Appeals held in *Buel* v. *The New York*

*Central R. R. Co.* (31 *N. Y.* 314,) that a passenger jumping from a car when he sees a collision between the train on which he is riding and another imminent, is not chargeable with negligence. (*Stokes* v. *Saltonstall*, 13 *Peters*, 181. *Wilde* v. *Hudson River R. R. Co.*, 33 *Barb.* 503.)

In *Chaplin* v. *Hawes*, (14 *Eng. Com. Law*, 445,) the plaintiff's horse, while being ridden by a servant, was injured by the cart of the defendant. Both parties were approaching a turnpike gate, in opposite directions. The gate had two openings for carriages going in opposite directions. At the one through which the defendant's cart should have passed, a carriage stood. The plaintiff's horse was approaching, and near to the other, where it was right for him to be. The driver of the cart attempted to go through the one near which the plaintiff's horse was, and while doing so, the injury to the horse occurred. It appeared that the plaintiff's servant might have got his horse out of danger, but did not. It was claimed, for the defence, that although his cart was on the wrong side of the road, yet it was the duty of the plaintiff's servant to have avoided injury if he could, and as he might have done. The court assent to the proposition, but say: "On the *sudden* a man may not be sufficiently self-possessed to know in what way to decide; and in such a case I think the wrong-doer is the party who is to be answerable for the mischief, though it might have been prevented by the other party's acting differently.

If the mental capacity of an adult, at the moment when he is called upon to meet impending danger, is to be taken into the account, in determining whether he was negligent, shall the same rule not be applied to those of less age, experience, coolness and judgment?

Without extending the discussion farther, I am of opinion that the plaintiff was not guilty of negligence, on the facts proved. But, at all events, the

question was one which should have been submitted to a jury.

The nonsuit should be set aside, and a new trial ordered; costs to abide the event.

New trial granted.(*a*)

[ONONDAGA GENERAL TERM, January 2, 1867. *Bacon, Foster* and *Mullin,* Justices.]

(*a*) On appeal from the above decision, the Court of Appeals reversed the judgment of nonsuit ordered at the circuit, and directed a judgment absolute to be entered against the defendant; thus sustaining, substantially, the decision of the General Term. See 51 *N. Y.* 666, for a very brief report of the decision in the appellate court.