(72 Misc. Rep. 555.)

## PASTORE v. LIVINGSTON.

(City Court of New York, Trial Term.　June, 1911.)

1. MUNICIPAL CORPORATIONS (§ 705*)—INJURY TO PEDESTRIAN—EVIDENCE.
　　A driver of an express wagon is not bound to anticipate the presence of an infant five years old in the street after dark, unaccompanied by any person of suitable age.
　　[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

2. NEGLIGENCE (§ 95*)—IMPUTED NEGLIGENCE.
　　Where a child five years old, residing with his parents in an apartment over a store, is allowed by his grandmother, who has taken charge of him, to go downstairs to the store, and is told that his mother will go across the street with him to a candy store, but the child crosses the street alone, and, on returning, is run over by an express wagon, the negligence of those having the child in custody is imputable to the infant.
　　[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 151–156; Dec. Dig. § 95.*]

Action by Rafelo Pastore by Angelo Pastore, his guardian ad litem, against Johnston Livingston.　Verdict for plaintiff.　Motion to set aside verdict and for a new trial granted.

Abraham Snydecker, for plaintiff.
Carter, Ledyard & Milburn, for defendant.

FINELITE, J.　This action was brought to recover damages for injuries received by the infant plaintiff through the negligence of the defendant.　It came on for trial before the court and jury, and resulted in a verdict in favor of the plaintiff in the sum of $120.　On the rendition of the verdict the defendant immediately moved to set it aside on the grounds, first, that the jury disregarded the court's instructions; second, that the verdict was against the weight of evidence; and, third, for a new trial on all the grounds specified in section 999 of the Code of Civil Procedure.　The court thereupon entertained defendant's motions and for a new trial.

From the facts it appears, briefly stated: That the infant plaintiff was of the age of five years and one month at the time he was injured, and resided with his parents at No. 419 West Forty-First street, between Ninth and Tenth avenues, in the city of New York.　His parent was in the grocery business at said place and occupied the floor above for living purposes.　That on the 20th day of December, 1909, the infant received a penny, and informed his grandmother, who was with him at the time in their living apartment, that he desired to purchase some candy.　She thereupon instructed him to go downstairs to his father's store, and his mother, who was in there, would go with him to the candy store.　The candy store was situated directly opposite the plaintiff's grocery store.　The infant disregarded his grandmother's advice, and went to the candy store and made his purchase.　It was then about 6 to 6:30 o'clock in the evening.

The proprietor of the candy store testified that, after the infant had made his purchase, he, the proprietor, opened the store door to permit the infant to go out, and he noticed that the infant walked out to the street slowly, and then he closed the door. The parents and grandmother testified to the effect that said infant was never permitted to play or go out on the street alone except under their observation. The witness Bartella testified that on the day of the accident he was proceeding homeward after his day's work, and as he reached the corner of Forty-First street and Ninth avenue he heard the rumbling of the wheels of a wagon. He turned around immediately and saw a wagon being driven along at a fast rate near the curb of the southerly side of Forty-First street, and at the same moment he heard an infant's cry, and, running over to the southerly side of Forty-First street, saw the infant plaintiff lying on his face on the ground, about three feet from the curb of the southerly sidewalk of the street. He picked him up, and with haste carried him to his father's store, at the same time attracting the attention of one Sabati, pointing to the wagon, which was continuing westwardly toward Tenth avenue. He further testified that it was a clear night, and the street was illuminated from the rays of the street lamp at or near the place of the accident, and that no wagon or vehicles or persons were on the street at the time. The witness Sabati testified that, when the wagon was pointed out to him, he immediately ran after it, kept it in sight, as no other wagon or vehicle was on the street at the time, followed it up to Tenth avenue, and by the rays of an electric light saw the name on the wagon as it was about turning westerly on Forty-Second street. The name thereon was painted on the side in large letters, and read: "The National Express Company." He also described the color of paint and wheels as red in his testimony. The wagon identified by this witness was one of the wagons used by defendant in its business. On direct examination of plaintiff's witnesses it was shown that no other wagon or vehicle was in the neighborhood except the alleged wagon of the defendant. On cross-examination it was brought out that the street was always crowded with vehicles, and most frequently at that hour of the night it was filled with traffic, and all kinds of wagons and vehicles were driven along said Forty-First street to Tenth avenue.

The question, when it arises in a negligence case, of whether an infant was sui juris or non sui juris, is only important in determining whether the infant is to be held responsible for his own contributory negligence, in which case freedom from personal negligence on his part only must be shown, or only for the negligence of his parents, in which case freedom from negligence on their part must be shown; and it depends upon whether he is of such age and intelligence that an ordinarily prudent parent would permit him to go about upon the public street alone. If he is not, then the question of contributory negligence hinges upon the conduct of the parent, and, if the parent has exercised that reasonable degree of care and diligence in keeping the infant from places where harm may befall him that would be exercised by parents of ordinary prudence under like circumstances,

then those who negligently injure the infant must respond in damages, and, if the parent has failed to exercise this degree of care, it is imputable to the infant and precludes a recovery unless the infant exercised that degree of care and caution that would have been exercised by an ordinarily prudent adult under like circumstances. If, however, the infant possesses sufficient age and intelligence to render it prudent for the parents to permit him to go on about the public streets unaccompanied, then he is said to be sui juris, and it is only his own contributory negligence which will defeat a recovery for injuries negligently inflicted by another. "While children who are sui juris are chargeable with contributory negligence and must exercise care for their own safety, it will not do to hold them responsible for the same degree of care as is exercised by ordinarily prudent adults or to cast upon them the burden of showing that they are incapable of exercising such a degree of care." Lafferty v. Third Ave. R. R. Co., 85 App. Div. 592, 600, 83 N. Y. Supp. 405, 411. There is no proof that the driver of defendant's wagon saw the infant at or before the injury or did any wanton damage to it. The infant, on account of its extreme youth, could not appreciate the dangers of the situation, nor protect itself from them. The infant was clearly non sui juris, and the negligence of its parents in permitting it to go across the street unattended is clearly attributable to it. The child in some manner not clearly explained came in contact with the horses or the wagon, and was injured. Who was responsible for the injury is not made clear by the evidence.

[1] No inference can be drawn in what manner the child was injured, irrespective of the wagon being on the wrong side of the road at the time, as it appears from the evidence of the father and the proprietor of the candy store that the street was a busy thoroughfare and many wagons passed through at that hour of the night. The infant was where it should not have been at that hour of the night unattended by a person of age and discretion. If the accident had occurred at a street crossing or in the daytime, when children congregate in the street, the verdict of the jury could not be disturbed, as it then would have been negligence of the driver, but as the accident occurred in the nighttime, when the driver was not bound to anticipate that such little tots would be upon the highway, he was not bound to act upon the assumption that they were there. Of course, it is assumed for all the purposes on a motion for a new trial that the facts testified to by the plaintiff's witnesses and by the verdict of the jury are true, and the plaintiff is entitled to the benefit of all inferences to be drawn from such facts, but under the liberal construction of the evidence there is nothing to fasten liability against the defendant if we take into consideration that the wagons driving along that street on that night were numerous. Express wagons with their weighty loads have the right to use public highways as freely as the pleasure wagon, automobiles, or the ordinary vehicle of trade, yet the dangers from them cannot be controlled further than to require ordinary care according to the exigencies of the case, leaving the wayfarer to protect himself as best he can. It requires the exercise of care and discre-

tion in every large city to protect one's self from the dangers which constantly menace life and limb, and it is only when, despite such care on the part of the pedestrian, an accident happens, that a remedy may be had in the courts. In the case of little children their parents are their natural protectors, and they must to an extent keep them out of harm's way or take the chance of injury. Unfortunately circumstances compel most parents to take these risks.

[2] When a child is too young to appreciate and protect itself from attending dangers which beset it in thickly populated districts and thoroughfares which are arteries of traffic, frequented at night by numerous vehicles, the parent must have some discreet attendant in charge or trust to good fortune rather than the law for the child's safety. This may be hard, but it is nevertheless the law as established in this state. Juskowitz v. Dry Dock, etc., R. Co., 25 Misc. Rep. 64, 53 N. Y. Supp. 992; Lowery v. New York Ice Co., 26 Misc. Rep. 163, 55 N. Y. Supp. 707, affirmed 44 App. Div. 637, 60 N. Y. Supp. 1142; Albert v. Albany R. Co., 5 App. Div. 544, 39 N. Y. Supp. 430, affirmed 154 N. Y. 780, 49 N. E. 1093. In Hartfield v. Roper, 21 Wend. 619, 34 Am. Dec. 273, the court said:

"The application (of the rule) may be harsh when made to small children, as they are known to have no personal discretion. Common humanity is alive to their protection; but they are not, therefore, exempt from the legal rule, when they bring an action for redress; and there is no other way of enforcing it, except by requiring due care at the hands of those to whom the law and the necessity of the case have delegated the exercise of discretion. An infant is not sui juris. He belongs to another, to whom the care of his person is exclusively confided. That person is keeper and agent for this purpose; and, in respect to third persons, his act must be deemed that of the infant; his neglect, the infant's neglect."

In Weil v. Railroad Co., 119 N. Y. 153, 23 N. E. 488, the court said:

"The plaintiff's parents were bound to protect her from danger so far as that could be done by the exercise of reasonable prudence and care."

There was a total absence of prudence and care in this instance. The plaintiff contends that the rule of law is established beyond question in this state that, although there is no direct evidence as to how the accident occurred, the jury may infer the negligence of the defendant and the lack of contributory negligence from the physical surroundings, and that the rule in the case of an infant is analogous to that in cases where a person meets his death through an accident, and no eyewitness is present. And further contends that in such cases the court will leave it to the jury to determine from all the surrounding circumstances as to the degree of care exercised by the deceased and as to the negligence of the defendant, and have a perfect right to infer from the fact that the wagon was being driven on the wrong side of the street in violation of the municipal ordinance, at a fast rate of speed, it was guilty of negligence. Plaintiff quotes the rule wherein an infant is sui juris or of the age of discretion, understanding, and comprehending when in a place of danger, or of an adult who should possess sufficient reasoning to avoid an injury, or

in case a person who met his death and no eyewitness present. In all of such cases it would be a question of fact for a jury to determine from the surrounding circumstances. But each case of negligence must depend upon its own facts. That is not the case here. No positive proof on behalf of the plaintiff had been produced as to what caused the injury to the infant except the statements made by the witnesses Bartella and Sabiti, and, if taken in connection with the evidence of the parent and the candy store proprietor as to the fact that a number of vehicles passed by at that hour of the night in the neighborhood where the infant was injured, it fails to show that the injury to the infant was caused by defendant's negligence, but under such circumstances the jury would have the right to draw the inference from the facts adduced.

As was said in Kunz v. City of Troy, 104 N. Y. 351, 10 N. E. 445, 58 Am. Rep. 508, reversing 36 Hun, 615:

"But we understand the present doctrine on this question to be that it is not sufficient to defeat a recovery for an injury to a child, not sui juris, caused by the negligence of a defendant, that the act of the child was one which in an adult would be deemed a negligent one contributing to the injury. There must also be concurring negligence on the part of the parents or guardians."

Many cases, recognizing the rule in Hartfield v. Roper, supra, have sustained recoveries in favor of an infant upon the ground that the negligence of the defendant was so voluntary and positive as to be the real causa causans. As was said in Ihl v. Forty-Second St. R. Co., 47 N. Y. 323, 7 Am. Rep. 450:

"The conduct of the infant may have an important bearing on the question of defendant's negligence, but, when the latter is clearly negligent, contributory personal negligence on the part of an infant obviously not sui juris cannot be alleged."

See, also, Mangam v. Brooklyn R. Co., 38 N. Y. 455, 98 Am. Dec. 66; McGarry v. Loomis, 63 N. Y. 104, 20 Am. Rep. 510; Thurber v. Harlem & B. M. & F. R. R. Co., 60 N. Y. 326. The child being negligently on the street and clearly producing the catastrophe by its own act, its parents cannot recover. Honegsberger v. Second Ave. R. R. Co., 33 How. Prac. 193, 201; Burke v. Broadway R. R. Co., 49 Barb. 529. The case of Mangam v. Brooklyn R. Co., 38 N. Y. 457, 98 Am. Dec. 66, is not exactly in point, but analogous to the question here involved. It was a case of a child three or four years old who escaped into the street through an open window, the door of the room being locked, and while in the roadway was injured by being struck by a dashboard. The driver had caught a pigeon, which he had in his hands and was sitting down looking at it, having wound the lines around the brake, and was paying no attention to the team. The negligence of the driver having been clearly proved, the court said:

"It was his duty while driving in the streets of Brooklyn to keep entire control of his team, as far as practicable, to be in a position to speedily apply the brake, to be vigilant, to observe the track so as to enable him as far as practicable to avoid inflicting injury upon others."

(In the court below, and as affirmed in 36 Barb. 230, it was proven that the accident happened in the daytime.) The court further said (page 457 of 38 N. Y., 98 Am. Dec. 66):

"The evidence shows that he was not permitted to go, unattended, in the street; that he was lost sight of by his sister for only about 20 minutes; that his only means of access to the street was by climbing out of an open window, which only came within four feet of the floor. There was no evidence that he had ever before got out of this window, or attempted to. I do not think that failing to guard this aperture will warrant the conclusion as matter of law that the parent was guilty of negligence."

To the same effect see Huerzeler v. Central Crosstown R. Co., 139 N. Y. 490, 34 N. E. 1101, affirmed 1 Misc. Rep. 136, 20 N. Y. Supp. 676. But in the case at bar the court must bear in mind that the infant was allowed to cross the street alone at the hour of the night in question when the street was used by a number of vehicles. It is the duty of the driver of the express wagon when he is on the wrong side of the street and close to the curb to be observant not only of what is directly in front of him, but of pedestrians who are traveling on the sidewalk, and who may step into the street and in front of the wagon. In such a situation the driver should either give a signal of warning to any pedestrian who is traveling on the sidewalk and may come into a position of danger if he steps off the curb, or should drive his wagon at so slow a rate that the horses would be under such control that injury could not be caused to such person. But it cannot be expected that the driver of the defendant's express wagon could anticipate that the infant would be allowed to frequent the street at that hour of night, unaccompanied by a person of suitable age and discretion, who would have the infant in charge so as to avoid danger. In Ardolino v. Reinhardt, 130 App. Div. 119, 120, 114 N. Y. Supp. 508, 509, Houghton, J., said:

"The burden is upon an infant who seeks to recover damages because of negligence as well as upon an adult, varying only in degree, which degree depends upon natural capacity, physical development, training, habits of life, surroundings, and the like. Of course a child of immature years cannot and should not be called upon to use such care in avoiding a danger as an adult ought to use. Nor can a dull or crippled child be expected to be so alert to danger as a bright and active one of the same age. Where an infant is so young that it has no judgment and cannot be expected to avoid danger, manifestly the only negligence which can be imputed to it is that of the person having it in charge. But there comes a time in the development of every child not an imbecile when he must have learned some things. Although it may lack judgment to act with care and circumspection in regard to avoiding danger, yet it may be quite sensible of the necessity of avoiding contact with many objects which experience has taught will inflict harm. From their surroundings and experience certain children might very easily learn to avoid passing vehicles and that there was great danger in a moving car. When an infant complains of wrongs to himself, the defendant has a right to insist that notwithstanding his immaturity he should not have been the heedless instrument of his own injury. Much can be found in the books respecting an infant deemed sui juris or non sui juris, and unfortunately many misleading expressions have been made concerning the obligation upon him in an action for negligence when he is found to be in one state or the other. In all actions to recover damages because of the negligence of another, we must start with the propositions that a complainant cannot be the heedless instrument of his own injury and that freedom from contributory negligence is an element of his cause of action. His freedom from contributory negligence is evidenced by the fact as to whether under all the conditions surrounding the accident reasonable care was exercised to avoid it. * * * The true rule in all actions for personal injuries based on negligence, therefore is that an infant, whether sui juris or non sui juris, must exercise such reasonable care in avoiding the injury of which he complains as can fairly be expected

of a child of his age, natural capacity, intelligence, physical condition, training, experience, habits of life, and surroundings. All the later and better considered decisions so hold. Stone v. Dry Dock, etc., R. R. Co., 115 N. Y. 104 [21 N. E. 712]; Costello v. Third Ave. R. R. Co., 161 N. Y. 324 [55 N. E. 897]; Buscher v. N. Y. Transp. Co., 114 App. Div. 85 [99 N. Y. Supp. 673]; Atchason v. United Traction Co., 90 App. Div. 571 [86 N. Y. Supp. 176]. Cases arise where children are so young that they have no capacity to appreciate danger or to avoid it, and hence are non sui juris as matter of law, in which case the negligence of their parents or custodian is a matter of inquiry, and, if any exists, it is imputable to the infant. Other cases arise in which it may be a question of fact for a jury as to whether an infant is sui juris or non sui juris, and, even if found to be non sui juris, still such infant is bound to exercise such care in avoiding the injury of which he complains as he can reasonably be expected to exercise in view of his years and capacity. and intelligence and experience. Very possibly this rule sweeps away much that has been written concerning the doctrine of sui juris and non sui juris, but no different rule can be the correct one in actions for personal injuries based on negligence."

Ingraham, J., concurring (page 122, 130 App. Div., page 511, 114 N. Y. Supp.), said:

"If he was absolutely without ability to exercise any care to avoid vehicles in the street, then it would have been the duty of the jury to have found that it was negligent for the parents to allow him to play there unattended; but, if he had such ability, he was bound to exercise it to avoid the vehicles lawfully using the street."

From the evidence in the case at bar, applied to the expressions of opinion of the cases herein cited, and from the charge of the court as made governing the facts adduced herein, there is no alternative for the court but to set aside the verdict. Motion to set aside the verdict and for a new trial is therefore granted, without costs, as a matter of right. Settle order on one day's notice.

Motion granted.