By the Court. Woodruff, J.
—The only grounds upon which the counsel for the appellants ask that the judgment herein be reversed are, that the justice, before whom the action was tried, refused to instruct the jury as requested by him on the trial; and that he erred in the instructions which he did give to the jury.
In our opinion, there was not only no error in these particulars prejudicial to the plaintiffs, but, upon the evidence, we think, a peremptory instruction to the jury, that the plaintiffs were not entitled to recover, would have been proper.
The nature and extent of the defendants’ connection *596 with the premises were shown without any dispute or contradiction. They were in the partial occupation of the third floor of the building; but not in the exclusive possession of any part of it. The firm of William D. Cromwell & Co. occupied and had the control of the second and third stories, and the lofts above; and had consented that the, defendants might temporarily store their goods and do business upon a portion' of the third floor, but in entire subordination to their control; Cromwell & Co. storing their goods upon a portion of the same floor, and allowing defendants, also, to store goods in the upper lofts; Cromwell & Co., and their employees, having access at all times to all parts of the premises. The defendants, not being-permitted to have any keys, could not enter the premises until admitted by Cromwell & Co.; and were compelled to leave before Cromwell & Co. closed the entrance.
Under these circumstances, we are clearly of opinion that before the plaintiffs could recover from the defendants for an injury sustained by an overflow of Water on this third floor, they were bound to show that it was caused by negligence of the defendants, or of their employees. The care and control of the premises were in Cromwell & Co.; and they were last in possession at night. Although the water flowed from a closet and faucet which were at the end of the loft, which the defendants used, yet Cromwell & Co. and their employees had like access to both.
The evidence of the plumber shows that if the water-flowed from the water-closet it was owing to the wire, connected with a valve, being in some manner caught, so that the valve did not close; and also to a stoppage in the waste-pipe at some distance below that floor.- Now as to the water-closet, the proof is uncontradicted and explicit, that neither the defendants nor their employees used that water-closet. For aught that appears, the disarrangement may have occurred before the defendants went to that store. At all events, there is not the slightest evidence, beyond the limited occupation of the loft, above stated, *597 which in any manner connects the defendants with the use of the water-closet, or with the disarrangement of its valve, or the stoppage in the water pipe.
If, on the other hand, the flow of water was from the faucet underneath the wash-basin, then, also, the plaintiffs have failed to show that the defendants, or any of their employees, left it open, This wash-basin was used by the employees of the defendants ; and also by the employees of Wm. D. Cromwell & Co. But so far from its appearing that the defendants or their employees left the faucet open, they expressly deny that they ever used it; and there is no counter proof.
We think it quite clear that where a party has the permission of the tenant to use fixtures of this description, but without having the control thereof, he is only liable upon proof that his negligence caused the mischief complained of. His having such a privilege raises no presumption of negligence on his part, which casts the burden on him of disproving it. In the present case, if the defendants and their employees, and Cromwell & Co., and their employees, came to the store together in the morning, and left together at night, it would still be no more probable that it was the negligence of the former that left the faucet open, or otherwise caused the overflow, than that it was the negligence of the latter. And when it appears that Cromwell & Co. were the tenants of the premises, giving the defendants only a qualified possession of a part, continuing themselves to have access to the whole, and. retaining the control, and actually claiming and exercising, day by day, the final supervision of the premises after the defendants had left at night, there is no presumption, in the absence of proof, that the faucet was left open by the defendants, or that their negligence otherwise caused it.
Indeed, if it had appeared' that the defendants had exclusive occupation of a part of the loft, and Cromwell & Co. had exclusive occupation of another part (as might be true of two tenants of a common landlord), but each had *598 a right to use a water-closet and faucet, connected with the Croton water, and each an equal control over the management and care thereof, we are of opinion that if either be sued for damages sustained by another from some carelessness in the use of the fixtures, the plaintiff must prove the neglect to be the defendants’. He cannot rest with merely showing his injury; and that it was caused by a flow in the night season from a faucet carelessly left open, without showing that it was so left by the carelessness of the defendant or his employees. Where two or more have the use of such fixtures in common, under a right of use or occupation held by them jointly, so that the use and the control of the premises is joint, the responsibility for the proper use and proper care of the fixtures may be joint; so that liability attaches' prima facie to each, on proof that negligence has occurred, and damage has ensued. But where the right is several, I apprehend that each is responsible only on proof of negligence on his own part; and neither is responsible for the negligence of the other.
The tenant of a. ground floor may, it is true, find difficulty in recovering his damages where there are many tenants above him, each of whom has the privilege of using the Croton water in some closet in the upper part of his store. But he is nevertheless only in the situation of all plaintiffs; he must prove a cause of action, and that the- defendant is the party liable.
It seems to us that these views are obviously just, and conformable to the first principles of the law; and that in this respect the instruction to the jury that, before finding a verdict for the plaintiffs, they must be satisfied that the negligence of the defendants, or of their servants, caused the injury, not only did the plaintiffs no injustice, but was a submission of the question to them, when there was in truth no sufficient evidence to warrant the jury in finding that the injury was so caused.
The other exceptions relate to the effect of the undertaking of one of the plaintiffs to take charge of the Croton *599 water pipes in the cellar, and see that the water was shut off at night.
In the first place, the occupation by the defendants was in subordination to that of Cromwell & Co. All the privileges they enjoyed, and all the use they had they received through Cromwell & Co., charged with no duties, and clothed with no obligations to any body, which did not rest upon Cromwell & Co., when the defendants came there, and which Cromwell & Co. were not bound to perform, if the defendants had never come nor sent their goods there.
The occupation of the water fixtures which the defendants were permitted to have, was at most a sharing of the privileges which Cromwell & Co. as tenants enjoyed.
It did not impose upon the defendants a duty to be more careful than Cromwell & Co. were themselves bound to be, and any arrangement which Cromwell & Co. made with the plaintiffs, either for the common protection of all, or to relieve the occupants of the lofts, necessarily operated to the protection of the defendants as a species of sub-tenants.
The proprietors of the lofts had experienced the. danger of overflow in the lofts; it may be from the defendants in the water closet above referred to; at all events, they were aware of the importance of having the water cut off from the lofts at night, which was of course a full protection to them, and to the plaintiffs also ; a cut-off (or stop cock) had been placed in the cellar of the store for the very purpose of stopping the water from going up to the lofts. It was so connected with this subject, that it is fair to presume that Cromwell & Co. had the right at all suitable times, either to resort to it themselves, and shut off the water, or to require the plaintiffs to do it. Be this as it may, they were in the habit of sending down and shutting-off the water before leaving the store at night. The plaintiffs recognized their right to do this, and the propriety of having it done, by agreeing in the person of Mr. Stowell, “ to see to it, and have it turned off himself.”
It would in our opinion, be gross injustice if, after this, the plaintiffs could neglect to do what they agreed to do, *600 and ask damages for the injury which they sustain in consequence.
We recognize the cases cited by the plaintiffs’ counsel on the subject of negligence, where the proximate cause of injury is on the one hand, and where the remote cause is on the other, but do not appreciate their application to the presentcase. The plaintiffs here have voluntarily disarmed the defendants of vigilance; agreed to do for them that which was a sure and adequate protection against any possible overflow of the water; that which, if done, rendered no precautions on the part of the defendants necessary; and having done this, the plaintiffs negligently omit to do the very thing which, but for this agreement, the defendants would have done themselves, and an overflow ensues, and the plaintiffs are now seeking compensation.
If there be any question whose negligence is proximate under such circumstances, we should say, at all events, that of the plaintiffs is not remote.
This point does not rest upon any idea that it was the duty of the plaintiffs to cut off the water in the cellar for their own protection, irrespective of any undertaking on their part to do so.
Nor upon the idea that they made a valid contract with Cromwell & Co., which as. a contract could be enforced by these defendants. Although, even on this point, it is not clear that the intermission of Cromwell & Co., to see to the shutting off the water by the plaintiffs’ request, was not a sufficient consideration for the plaintiffs’ agreement to see that it was done, and had .the plaintiffs’ neglect to do so caused an overflow, and damaged the goods in the lofts, the plaintiffs may have been responsible.
But we rest this branch of the case upon the undisputed fact, and one which the jury found proved to their satisfaction, that the omission of Cromwell & Co. to shut off the water (which would have prevented the whole injury of which the plaintiffs now complain) was by the express request of the plaintiffs themselves; and that request was acceded to upon the like express undertaking of the plain *601 tiffs, to see that it was doné, and upon this Cromwell & Co. and the defendants had a right to rely.
As against these plaintiffs, and on a question, what care and diligence was due to them, the occupants of the lofts had a right to assume that they would do what they had agreed to do, and what they had prevented the tenants themselves from doing.
So far from there being error in this part of the charge, we think that in this also, (the testimony being uncontradicted, and no circumstance impairing its credibility,) the charge might have been more strongly against the plaintiffs.
The judgment should therefore be affirmed. -
Judgment affirmed with costs.