## HANNAH LANNEN, an infant, *vs.* THE ALBANY GAS LIGHT COMPANY.

The defendant, having introduced gas into a house occupied by the plaintiff's father, with whom she resided, by means of pipes leading through the cellar wall, an escape of gas occurred, of which the defendant was promptly notified. The defendant, as was its custom, sent S. one of its servants, to ascertain where the leak was, who lighted a match, and thereby ignited the escaped gas, in the cellar, causing an explosion, by which the house was blown to pieces, and the plaintiff seriously injured. *Held* that the evidence of negligence, on the part of the defendant, was clear and decisive; the casualty being the direct and immediate consequence of the explosion, which was caused by the negligent act of the defendant's agent. And that the defendant's negligence was established by that fact, whether S. was wholly or only in part the defendant's agent.

But that the judge correctly held, on the trial, that S. was exclusively the defendant's agent. And that the act done was in the line of his agency, and the defendant responsible for his acts.

*Held, also,* that S.'s duties extended to such an examination as was necessary to determine the *locality* of the leak, wherever it was, and the catastrophe originated in the improper method resorted to for the purpose of pursuing such examination. And that hence the judge was not bound to charge the jury that the defendant was not liable for S.'s negligence if the leak was in the brass head, and not in the service-pipe.

And it appearing that the leak was in a pipe called a bent, close to its joint with the service-pipe, which was not put in by the defendant, but by the plaintiff's father; and that the pipes put in by him were in fact originally put in with care, and had been inspected and approved by the defendant; and there being no decisive evidence to show how the fracture in the pipe was produced; *it was held* that this was a question for the jury to determine, and that the court would assume it was presented to them under proper instructions from the judge.

*Held,* also, that it was a question of some difficulty whether the act of permitting the gas to escape, which in itself was not the cause of the explosion, could be said to have contributed to it in so direct or proximate a manner as to justify the imputation of such negligence as should defeat a recovery for damages consequent upon the explosion.

*Held, further,* that had the plaintiff been an adult, there would have been no ground for charging her with personal negligence; and that she was not more chargeable for being an infant of tender years.

There is no just or legal principle which, when an infant is himself free from negligence, imputes to him the negligence of his parent, when if he were an adult he would escape it.

The principle of the rule is, that before a party can be made liable for negligence, he must himself, personally or by his agents, have been guilty of it; that he ought not to be chargeable for the negligence of another, over whom he has no

Lannen *v.* Albany Gas Light Company.

control or rightful authority, and whose negligence he had no reason to anticipate; and that though this doctrine may in some cases expose a defendant to an action where if the action were brought by another party, for damages resulting from the same casualty, he would not be liable, yet it works no injustice, as it never allows a party to recover, unless his adversary has been guilty of negligence, and he himself is free from it.

THIS was an action brought to recover damages arising from an injury received by the plaintiff from an explosion of gas on the 6th of December, 1861. The plaintiff was, at the time of the injury, about seven years old, and the house in which she was, and in which the explosion took place, was then occupied by her father. The gas was put in through the cellar wall of the house, by the defendant, at the instance of the plaintiff's father, in September, 1860. One Donnelly lived in the north part of the house. A cellar extended under the whole house, and through the center, from east to west, ran a brick partition. A door led from the north side of the cellar out upon the street, and to the east of this door, and in the northeast part of the cellar, the defendant's gas pipe entered. There was a coal bin in that part of the cellar, made by a wood partition about a foot east of the doorway, and a door in it, about eight feet from the doorway. This bin was the property of one Grace, who kept it locked, and the plaintiff's father had no control over it. The plaintiff's father and mother, together with herself, occupied the south part of the house on the first floor, most remote from the pipe. The father was absent at the time of the injury. About four o'clock in the afternoon, a smell of gas was discovered, in the house, both by Donnelly in his part of the house and by the plaintiff's mother in her part of the house. Donnelly immediately went to the cellar, and found it very strong there. He then turned the gas off the meter and promptly notified the defendant's company that the gas was escaping. He was directed by the defendant to return and prevent any one from going into the cellar *with a light.* He did so, and the defendant very

soon sent down Smith, one of its servants, a common laborer in its employ, to ascertain where the leak was. He entered the cellar, with Donnelly, and found the smell of the gas so strong that it was dangerous. In the absence of Donnelly, who had gone to get the key of the coal bin of Grace, the defendant's servant struck a match, and thereby ignited the gas in the cellar. The effect was terrible and instantaneous. The interior of the house was blown to pieces. The plaintiff and her mother were blown up to the ceiling of the room they were in, and then fell through the crushed and broken floor, together with pieces of boards and timbers into the cellar. The plaintiff's left thigh bone was broken. "The leg bone was sticking through the flesh two or three inches; a flesh wound above the kneepan; thigh bone protruding through this flesh wound; the bone was completely peeled off; it was necessary to saw off three inches of the bone; there was a permanent shortened limb, and stiff knee joint; the limb is two inches shorter; there was a great deal of suffering," and the plaintiff was confined to her bed three months.

Evidence was given on the part of the defendant showing that it was the custom of the company to require any leak to be reported to it by the occupant, and, upon receiving such report, to send one of its servants to ascertain where the leak was; and Smith was, in this instance, sent by the defendant for that purpose. That it was its custom to carry its pipe to the inside of a cellar wall, and stop there, but that they never let gas into a house until a person in their employ had inspected the pipes put in the house by the owner, and had approved of them ; and that in this case an inspector in the employ of the defendant had inspected and approved of the pipes put up in the house by the plaintiff's father ; and they were in fact, originally, well and thoroughly put up. It also appeared that a leak below the meter was for the interest of the defendant to stop, although it should be in the pipes put up by the occupant; and that all gas escaping below the meter was the loss of the defendant, and

no loss to the occupant; and that the meters were furnished by the defendant. The defendant also introduced evidence tending to show that the leak was in a pipe called a bent, close to its joint with the service pipe, and was not put in by the defendant; and that this leak was below the meter.

The defendant, at the close of the evidence, moved for a nonsuit, substantially on the grounds: 1st. That the leak was in the pipe put up by the plaintiff's father; 2d. That Smith was, in part at least, the agent of the tenants, and the defendant not responsible for his negligence; 3d. That the leak being in the defendant's pipe, the act of. Smith was gratuitous and in the service of the tenant, and the defendant not responsible. The motion was denied, and the defendant excepted. The defendant in various forms requested the court to charge the jury that the defendant was not responsible, because the leak was in Lannen's pipe, and not in the defendant's pipe; and because Smith was, in part at least, the agent of Lannen or of the tenants. The court refused so to charge, and the defendant excepted. The court charged that Smith was the defendant's agent, and not the plaintiff's, in ascertaining the locality of the leak. The defendant excepted. The court charged that if the injury was caused by the negligence of Smith, in lighting a match, the defendant was liable. The defendant excepted. The jury rendered a verdict for the plaintiff for $2000. The exceptions were ordered to be heard in the first instance at a general term. So far as they are material, they are referred to in the opinion of the court.

*Samuel Hand*, for the respondent.

*A. J. Parker*, for the appellant.

. . *By the Court*, HOGEBOOM, J. The evidence of negligence on the part of the defendant was clear and decisive. The casualty was the direct and immediate consequence of the

explosion, and this was caused by the negligent act of the defendant's agent in lighting a match in the midst of a large quantity of inflammable and explosive gas. The defendant's negligence is established by this fact, whether Smith was wholly or only in part the defendant's agent.

But I see no reason to doubt the correctness of the judge's holding that Smith was exclusively the defendant's agent. He was in the defendant's employ, and sent by it — certainly not by the plaintiff or her father — to do an act which it was the defendant's interest, duty and custom to perform. There was no request to perform this act, on the part of the plaintiff or her father, and nothing done by him, which would give a legal claim to compensation from them.

I think, also, there was no such negligence on the part of the plaintiff established as would have justified the court in nonsuiting her, or in taking the case from the jury adversely to her.

Whether there was negligence at all, either by the plaintiff or her father, is not clear from the evidence; at least not so clear as to entitle the court to nonsuit. The pipe in which the leak or fracture was discovered seems to have been originally put up with care, and to have passed inspection at the hands of the defendant's agent; and so far as the evidence shows, not before to have betrayed any flaws or defects. There is no decisive evidence to show — and it is a difficult question to solve — how the fracture was produced. It may perhaps have been by an accumulation of coal upon the pipe; it may have been by some sudden jar or blow, which was the result of accident, and against which ordinary prudence could not provide. In such a state of the evidence it was a question for the jury, and we must assume it was presented to them under proper instructions from the court.

Again. Whether if there was negligence in this respect, it was of that direct and proximate character which may be said to have contributed to the catastrophe, is not to my mind entirely clear. Assuming that the house belonged to

and was in the possession of the plaintiff and her father, perhaps they would have a right, as incident to that property and that possession, to have gas in their cellar, if it were not dangerous to other persons. Perhaps we ought not to presume that fire or light would be permitted to come in contact with it, especially by persons aware of the presence of the gas and the danger of its contact with fire, Many an article of an inflammable or explosive character is permitted to be kept in inhabited dwellings, by law. The danger arises from some other material being brought in proximity to or contact with them. It is hence a question of some difficulty whether the act of permitting the gas to escape, which in itself was not the cause of the explosion, can be said to have contributed to it in any such direct or proximate manner as to justify the imputation of such negligence as should defeat a recovery for damages consequent upon the explosion. (*Bernhardt* v. *Saratoga R. R. Co.*, 23 *How.* 166. *Cook* v. *Champlain Trans. Co.*, 1 *Denio*, 91. *Castle* v. *Durea*, 32 *Barb.* 480. *Barton* v. *City of Syracuse*, 37 *id.* 292. *Moore* v. *Goedel*, 7 *Bosw.* 591. *Ryan* v. *Fowler*, 24 *N. Y. Rep.* 410. *Carroll* v. *N. Y. and N. H. R. R. Co.*, 1 *Duer*, 571. *Colegrove* v. *N. Y. and Harlem R. R. Co.*, 6 *id.* 382. *Clark* v. *Eighth Av. R. R. Co.*, 32 *Barb.* 657. *Owen* v. *Hud. Riv. R. R. Co.*, 7 *Bosw.* 329.)

I have another difficulty on the question of the plaintiff's negligence. The plaintiff herself was not negligent. She was lawfully and properly, and not negligently in the room where the accident occurred, and she did nothing in any way to produce it. The only way in which she can be held liable for negligence, is by imputing to her the negligence of her father. If she had been an adult, there would have been no ground for charging her with personal negligence. Is she more chargeable because she was an infant of tender years? In my opinion she is not. There are cases, undoubtedly, which hold an infant who brings an action for damages resulting from negligence responsible for his own negligence,

in the same manner as if he were an adult, upon the ground
that infancy must be employed as a shield, and not as a
sword, and upon the ground that the negligence of the parent
or guardian which allows the infant to be placed in circum-
stances where his or her negligent conduct exposes him to
injury, must be imputed to him when he comes to make a
claim founded upon or accompanied by an act of negligence.
(*Hartfield* v. *Roper*, 21 *Wend.* 615. *Munger* v. *Tonawanda
R. R. Co.*, 4 *N. Y. Rep.* 349. *Willetts* v. *Buffalo and
Rochester R. R. Co.*, 14 *Barb.* 385.) But I know of no just
or legal principle which, when the infant himself is free from
negligence, imputes to him the negligence of the parent,
when, if he were an adult, he would escape it. This would
be, I think, "visiting the sins of the fathers upon the children"
to an extent not contemplated in the *decalogue*, or in the
more imperfect digests of human law.

Perhaps the liability may be claimed to attach upon
another principle, to wit, that a person is liable for the neg-
ligence of another person, in whose company, charge or con-
trol he may happen to be. But this position, though
sustained by respectable authority, is not, I think, in accord-
ance with the weight of authority in this state. In *Brown*
v. *N. Y. Central R. R. Co.*, (31 *Barb.* 385,) it was held that
when the plaintiff while traveling in a stage coach, received
an injury from the defendant's cars in crossing the track, the
negligence of the stage coach driver was chargeable to the
plaintiff, and must be regarded, for all the purposes of an
action, against the defendants for the injury, as the negli-
gence of the plaintiff. The contrary was held at the circuit
in the reported case of *Knapp* v. *Dagg*, (18 *How. Pr.* 165;)
also in the Superior Court of New York, in the case of *Cole-
grove* v. *N. Y. and Harlem R. R. Co.*, (6 *Duer*, 382,) and
in the Court of Appeals, in the case of *Chapman* v. *New
Haven R. R. Co.*, (19 *N. Y. Rep.* 341.) In the last case it
was held that a passenger by railroad is not so identified with
the proprietors of the train conveying him, or their servants,

as to be responsible for negligence on their part. He may, therefore, recover against the proprietors of another train for damages from a collision through their negligence, though there was such negligence in the management of the train conveying him as would have defeated an action by its owners. See further as to the extent and limitations of the rule, the following cases: *Hartfield* v. *Roper*, (21 *Wend.* 615;) *Munger* v. *Tonawanda R. R. Co.*, (4 *Comst.* 349;) *Willetts* v. *Buf. and Roch. R. R. Co.*, (14 *Barb.* 385;) *Mangam* v. *Brooklyn City R. R. Co.*, (36 *id.* 230.)

The principle of the rule thus established is, that before a party can be liable for negligence, he must himself personally or by his agents, have been guilty of it; that he ought not to be chargeable for the negligence of another, over whose movements he has no control or rightful authority, and whose negligence he had no reason to anticipate; and that though this doctrine may in some cases expose a defendant to an action where, if the action were brought by another party for damages resulting from the same casualty, he would not be liable, yet it works no injustice, as it never allows a party to recover unless his adversary has been guilty of negligence, and he himself is free from it.

The other questions may be disposed of more briefly.

The request to charge that if the leak was in the bend put in by the gas fitter, the defendant was not responsible for any thing done by Smith in regard to its *repair*, was properly overruled: 1st. Because Smith did nothing towards the *repair* of the pipe. 2d. Because, as we have held Smith to have been the defendant's agent and the act done was in the line of his agency, the defendant would have been responsible for his acts.

The same reasons show the next request to have been improper, to wit, the request to charge that the defendant was not liable for Smith's negligence if the leak was in the brass bend, and not in the service pipe. Smith's duties extended to such examination as was necessary to determine the

*locality* of the leak wherever it was, and the catastrophe originated in the improper method resorted to for the pur pose of pursuing such examination.

I think all the other exceptions are covered by what has been already said. The motion for a new trial must be denied, and the plaintiff must have judgment on the verdict.

Judgment for the plaintiff.

[ALBANY GENERAL TERM, December 4, 1865. *Hogeboom, Miller* and *Ingalls*, Justices.]