*Welch, J.
What the counsel of the plaintiff in error in- [408 .sists upon is: 1. That the court erred in leaving it to the jury to aay whether Mary or her sister were guilty of negligence contributing to the result, and in refusing to instruct them'that the failure of the girls to look along the line of the road was in law such. *409 negligence; 2. That the jury were wrong in finding that there was-no such negligence in fact.
Both these propositions rest upon the assumption that this is a case for the application of the doctrine of what is called “ imputed negligence.” In other words, it is claimed that although the plaintiff, being a mere child, was incapable of negligence, yet thenegligenee of the parents, as assumed in the charge asked, or of the elder sister, as declared by the court in its charge, is to be imputed to the plaintiff and to stand as a bar to her recovery. If such is not the law of the case, neither of these propositions have-any foundation whatever, and the whole case is disposed of at once. Because, it can not be denied that the jury were fairly justified in> finding the company guilty of negligence; it is not claimed that the child was capable of actual negligence; and the charges refused to bo given by the court were based upon and involved this-doctrine of imputed negligence, and might well have been refused, upon that ground. And although the court put its refusal upon other grounds, and charged that it was a cáse for imputed or constructive negligence, yet the error, if any, was not an error to t-heprejudiee of the company, but in its favor. If, therefore, it be not. the law of such a case that the child is chargeable, by imputation, or implication, with the carelessness or fault of the parents or sister, then there was no error, either in the charge of the court or-the finding of the jury. Is such the law of the case? This is an important question — rendered peculiarly so at the present time by the extensive and increasing use of railroads in the country — and we have given it that careful consideration which its importance seems-to us to demand. So far as we know, it is a new question in this state-
It is well settled that an adult person capable of self-control can not recover for injuries occasioned by negligence, where he has-409] himself also been guilty of negligence which ^contributed to the result. This rule of law is founded upon reason and considerations of justice and public policy, which it seems to us are-wholly inapplicable to the case of an infant plaintiff. These reasons and considerations arc : 1. The mutuality of the wrong, entitling each party alike, where both are injured, to his action against the other, if it entitles either; 2. The impolicy of allowing a party to recover for his own wrong; and, 3. The policy of naakingtbe personal interests of parties dependent upon their own prudence= and care. All these are wanting in the ease of an infant plaintiff. *410 No action can be maintained against Mm for tbe negligence of his parent or custodian; and it is difficult to perceive what principle of public policy ,is to be subserved, or how it can be reconciled with justice to the infant, to make his personal rights dependent upon the good or bad conduct of others. It is the old doctrine of the •father eating grapes, and the child’s teeth being set on edge. The ■strong objection to it is its palpable injustice to the infant. Can it be true, and is such the law, that if only one party offends against •an infant he has his action, but that if two offend against him, their faults neutralize each other, and he is without remedy? His right is to have an action against both.
We are aware that the doctrine is not without authority. It is ■roundly asserted, both in American and English cases, that wherever the negligence or fault of an adult would bar his right of action, the like negligence or fault of the parent or custodian of the infant will be imputed to him, and operate to bar his right. We have examined most of these authorities with some care, and the result is a conviction, that in most of the cases the assertion of the doctrine amounts to little more than mere dicta. If we look at the cases themselves, aside from the mere reasoning of the judges who delivered the opinions, they warrant the declaration of no such general rule, and the adjudication therein can be maintained without its aid. The utmost that can fairly be claimed from the authorities is, ■that the rule is applicable to some cases, to be determined by the nature of the negligence of defendant. In all of them it seems agreed that it has no application to cases of “willful” (or what some •of them denominate “ culpable ” *or “ gross ”) negligence.. In [410 ■most of them, its application is limited to eases of “slight” or “remote” negligence; and in some of them (particularly the cases in Illinois) its application is made to depend upon the comparative -amount or degree of the negligence of the defendant, and that of the -parent or guardian of the child. A close examination of the cases, it seems to us, will show their distinguishing feature to be, that the injury resulting from the defendant’s negligence was out of the ordinary sequence of events, and therefore such as a person exercising •proper caution and forethought under the circumstances, could not ■have anticipated or expected. If this characteristic is not common to all of these cases, it is to most of them; and while we do not quarrel with the decisions, or results reached in most of them, we •should prefer to place them upon the ground indicated — that the *411 injury was not the legitimate consequence of defendant’s negligence — - rather than upon the dangerous ground that the child, in some-mysterious and unnatural sense, is accountable for the negligence of its parent or guardian.
We speak, of course, alone of the cases in which the doctrine of imputed negligence has been declared. The weight of authority,, in our judgment, as well as the reasoning, is against the adoption» of the doctrine in any form, or under any circumstances.
The leading English case on the subject is Lynch v. Nurdin, 1 Q. B. 29. The defendant had left his horse and cart standing in the-street, and the plaintiff, a small boy, with other boys, climbed upon, the cart and started the horse, whereby the plaintiff was injured.. The court held that the plaintiff was entitled to recover, notwithstanding his wrongful act of climbing upon the cart. The court say, in substance, that no greater degree of care and prudence than the plaintiff exhibited, could be “expected” from the child; that he-simply obeyed his “childish instincts;” and that the accident was-no more than what might have been anticipated by the defendant, as a “probable” occurrence under the circumstances.
Much to the same effect, so far as this question is concerned, are-the cases of Rigby v. Hewitt, 5 Exch. 240; Greenland v. Chaplin. Id. 243 ; 411] Quarman v. Burnett, 6 M. & W. 499 ; Reedie v. R. R. Co., 4 Exch. 244; Daniels v. Potter, 4 Car. & P. 262 ; Dixon v. Bell, 5 M. & S. 198; Jay v. Whitfield, 4 Bing. 644; Lygo v. Newbald, 9 Exch. 302; and Gardner v. Grace, 1 Fost. & Finl. 359. The cases of Waite v. The Railway Co., 5 Jurist, 936; Hughes v. Macfie, 2 Hurl. & Colt. 748 ; Singleton v. The Railway Co., 97 Eng. Com. L. 287 ; and Mangan v. Allerton, 1 Law R. Ex. 29, relied upon, as shaking the authority of Lynch v. Nurdin, are not so to be construed. The case of Waite was put upon the footing of a “ con.tract.” In the Singleton case, both judges say “there was no negligence ” on the part of defendant. The cases of Hughes v. Macfie and Mangan v. Allerton come clearly within the description, above suggested, of cases where the result could not reasonably be expected or anticipated. In all of them the adjudications might well have been placed upon the ground that the injury was not the legitimate consequence of defendant’s negligence, but of some extraneous cause.
In- this country the cases are conflicting. The law of imputed negligence is denied by the courts of Connecticut, Yermont, and' *412 Pennsylvania ; and it is admitted, in a more or less qualified sense,, by the courts of Massachusetts, New York, Indiana, and Illinois.
The Massachusetts cases relied upon by counsel for plaintiff int error, are Holly v. The Gas Co., 8 Gray, 123, and Wright v. The-Street Railway Co., 4 Allen, 283. In the first-named case the court, deny the child’s right of action, expressly on the ground that the-injury was not a legitimate result of the defendant’s negligence, but was occasioned by the act of the father. In the last-named-case there is no definite proof as to the character of defendant’® negligence, but the court lay down in general terms the rule contended for, basing its authority upon the case of Holly v. The Gas Co., adding, however, that the contrary is the law in England, and in Pennsylvania, Connecticut, and Vermont.
The New York cases relied upon are: Hartfield v. Roper, 21 Wend. 615, and Lehman v. City of Brooklyn, 29 Barb. 234. In both, the court declare that the defendant was guilty of no negligence, and place the decision upon that ground. Anything, ^therefore, said by the court on the subject of concurring [412 negligence, could only have the force of a dictum. In the former case, where a child had been run over by a sleigh, while sitting unobserved upon a road in the country, the court say, that if it had happened upon a street in a village or city, it would have been the duty of the driver, to “ look out ” for such accidents, because they are to be “ expected ” there; but that such is not the case in the country. In the latter case, where a child was drowned in a well, the court expressly say, that there was no proof of negligence in the city authorities. And it would seem that in an important New York case, not cited by counsel (Lannen v. Albany Gas-Light Co., 46 Barb. 264), the doctrine of imputed negligence is denied.
The cases in Illinois are : City of Chicago v. Major, 18 Ill. 360; Ross et al. v. Innis, 26, Id. 259, and City of Chicago v. Starr’s Adm’r, 42 Id. 174.
The case against Major was this : A small child, straying some-distance from home unprotected, fell into a tank, which had been left open near the sidewalk. The child was allowed to recover, the court placing its opinion upon the ground, that “ a large majority of children living in cities, depend upon the daily labor of their parents for subsistence,” and the parents are “ unable to employ nurses ” to watch and control them.- The court say that it is not true, “ that every time a child steps into the street unattended, the *413 mother is guilty of such negligence as would authorize the city to set traps and pitfalls for it.’ ”
In The City of Chicago v. Starr’s Adm’r, 42 Ill. 174, which is much relied upon in support of this doctrine, the above language in Chicago v. Major is quoted by the court, with the remark : “ We agree with every word of this.” The case was an action by the administrator of a child, who had been killed by the falling of a heavy counter, which had been placed upon its edge, leaning .against a fence, on the border of the sidewalk, so as slightly to -obstruct the walk, but not so as to be at all dangerous to passengers upon the walk. The child had wandered unprotected a long distance from home, and by climbingupon the counter caused it to 4-13] *fall, thereby .occasioning the death of the child. The only fault of the city was in permitting the counter to remain to the obstruction of the sidewalk. There was nothing in the case to show that the city officers, whose duty it was to remove the counter, could have reasonably “anticipated” any such serious casualty, or •any evil beyond the simple inconvenience to travel, as the possible “ consequence ” of their omission; and it is upon this ground, mainly, that the court place their decision against the plaintiff’s right to recover. The court say, among other things: “But while this -counter was an obstruction, it was certainly but a very slight one. . . . During the two or three weeks it remained upon the sidewalk, it probably never occurred to any one who saw it, that human life or limb would be jeopardized by its presence there. . . . The most prudent and cautious persons would not have anticipated such an accident. . . . The degree of negligence is not to -be judged of by a single accident. . . . The question is, rather, what would have been the course of a prudent person prior to the :accident. . . . What would a prudent person have thought of ihe liability to cause the injury.”
In the case of Ross et al. v. Innis, 26 Ill. 259, where a recovery was denied to an adult for injuries received while improperly attempting to pass under a car, which had been carelessly left standing upon the street in the night season, the court go out of the case to say: “And whilst the company were guilty of such negligence as would have rendered them liable for injury to a child, yet the deceased being an adult must be presumed to bo endowed with sufficient reason to enable him to exercise ordinary prudence.”
In the two cases decided in Indiana (P., F. W. & C. R. R. Co. v. *414 Vining, 27 Ind. 513, and L. & I. R. R. Co. v. Huffman, 28 Ind. 287), "the existence of the rule contended for seems to be taken for granted, but the facts in regard to the negligence of the defendant are not definitely shown.
In the cases in Connecticut and Vermont (Birge v. Gardiner, 19 Conn. 507; Daley v. N. & W. R. R. Co., 26 Ind. 358; and Robinson v. Cone, 22 Vt. 213), the doctrine is squarely denied.
The same is also true of the Pennsylvania cases (Penn. R. R. *Co. v. Kelly, 7 Penn. St. 372; Rauch v. Lloyd, 31 Penn. St. 358; [414 P. & R. R. Co. v. Spearen, 47 Penn. St. 300 ; Glassey v. Hestonsville, etc., 57 Id. 172; and N. P. R. R. Co. v. Mahoney, Ib. 187), unless there maybe some doubt (and we think there need be none) as to the case of the R. R. Co. v. Spearen. The counsel for plaintiff in error seem to rely upon the last-named case, and ask us to ex.amine it carefully. We have done so, but fail to see that it supports them. “The case is,” says the court, in delivering its opinion, “ simply that of a little thoughtless child running suddenly to cross before an engine, at a place where the engineer would not expect it, and being knocked down before the engine could ordinarily be stopped, . . . and where the disputed fact, whether the engine whistled before it came to the crossing ” (which was near by, but had already been passed) “ could not have had anything to do in causing the injury.” Indeed, the case was decided, substantially, upon the ground that the company was guilty of no negligence -contributing to the injury. Yet the court are careful to say, “it is a hard rule that would hold a child of five years of age to the same measure of care and diligence which is required of adults.”
In Rauch v. Lloyd, 31. Penn. St. 358, the evidence showed .that the plaintiff, a child of tender years, unattended, attempted to pass under a car wrongfully left standing upon the street, and was injured by the starting of the car. The court held that although the attempt- to pass under the car would have been recklessness and concurring negligence in an adult, such as to prevent a recovery, it was not such in the child. The same doctrine was held in the Penn. R. R. Co. v. Kelly, Id. 372.
The most recent cases on the subject are the above-named cases, in 57 Penn. In the former, Glassey v. Hestonsville, 172, the court holds that a father, guilty of negligence contributing to the injury, will be denied his action for the injury to the child; and the court approves the decision made in a former case (Smith v. O’Connor, 12 *415 Wright, 223), to the same effect. The court says: “Although an infant of tender years may recover against a wrong-doer, for an injury which was partly caused by his own imprudent act, an adult father can not.”
415] But the most important case to be considered is that of *The N. P. R. R. Co. v. Mahoney, 187. It is important, because it is elaborately argued and considered, and because it is almost identical with the case at bar. The plaintiff was a child of four years, who had been run over by an engine and tender, passing, with the tender in front, slowly through a street in the vicinity of several schools. The child was unattended, but its aunt, in attempting its rescue, was guilty of negligence which contributed to the accident, resulting in her death and the injury to the child. The fault of the railroad'company consisted in so piling the wood upon the tender as to obstruct the engineer’s view ahead, and in the engineer’s failing to look out, as he might have done through a window, upon the track, or to place a sentinel on the tender. The court held the plaintiff entitled to recover. In delivering the opinion, the district court, among other things, says: “ If, however, this was an action by the father to recover damages for the death of the child, a very different question would bo presented. It would probably be held that it was negligence to suffer an infant to be on the streets without a care-taker, and he could not hold the defendants responsible, whether he had appointed a care-taker who was negligent, or left the child to roam at large without one. To a child of plaintiff’s years no contributory negligence can be imputed. . . She is not precluded from recovery against one joint tort-feasor, by showing-that others have borne a share in it.” This opinion was fully approved and the judgment affirmed in the ¡Supreme Court.
The foregoing are all the leading authorities on the subject. Upon careful review of them, we are inclined to follow those where the principle of imputed negligence has been denied. It follows, of course, that there is no error in this judgment. Indeed, it seems to us the same result must be reached in the present case, whether the principle contended for be adopted or rejected. The injury here was within the ordinary and probable sequence of events, a result of the defendant’s negligence. It might reasonably have been anticipated. There was danger of its happening, such as- an ordinarily careful and prudent person might have apprehended, and *416 •would be likely to apprehend, as a possible result of any relaxation of vigilance and care.
*As to the fact of negligence, we are concluded by the find- [416' ing of the jury. There was evidence tending to show .that no whistle or bell was sounded, and we can not say, with that certainty which justifies us in setting aside the verdict of the jury, and they were wrong in so finding. The failure of the brakeman to-keep a lookout upon the track is expressly found by the jury, and is not denied. Under the circumstances, this was a clear omission of duty. He was a man, and the parties upon the track were children. His experience and supposed skill enabled him to know and' appreciate, better than the girls could, the danger of the situation,, and the means necessary to avoid it. He may fairly be presumed to have known the time of the express train, and the effect of the noise it would make, and of the curiosity it might excite among children and other persons upon or near the tracks. Under such circumstances, involving danger to human life, it is only the common dictate of humanity to say that a high degree of caution should be required, and that any relaxation of it is negligence. Perhaps-we ought not t(j say, in a case like the present, that it amounts to censurable or gross negligence. We are all liable at times- — the-very best and most prudent of men are- — to lapse and become forgetful not only of danger to others, but also of danger to themselves. It. is human to err, and the lives of the best of us are full of errors. But the errors of each should be made to fall upon himself rather than upon others; and where that can not otherwise be effected, the-law wisely and justly requires from the party at fault a fair and adequate compensation to the innocent party aggrieved.
We think, therefore, upon any view of the law of this case, that there was no error in the proceedings of the court below; and, for the reasons already assigned, we are constrained to place our decision upon the broad ground that an infant can not be deprived of his action against a wrong-doer by reason of the concurring fault of a third person.

Judgment affirmed.

Day, C. J., and Brinkerhoff, Scott, and White, JJ., concurred