Clarke *v.* Anderson.

## City Court.

*General Term—February*, 1885.

ABRAHAM H. CLARKE et al., Plaintiffs and Respon-
dents, *against* JOHN R. ANDERSON et al.,
Defendants and Appellants.

The plaintiffs occupied the sub-cellar of premises No. 63 Reade
street. The Dixon Crucible Co., who were landlords of the
plaintiffs, occupied the basement and first floors of said premises.
The defendants and two tenants of theirs occupied the second
floor. There was a stop-cock in the basement occupied by the
Crucible Co., which, when shut off, effectually prevented the Croton
water from entering the building. The Crucible Co. were in the
habit of shutting off this stop-cock on closing their business for
the day. On the Saturday before the overflow occurred, the Cruci-
ble Co. failed to perform this duty, and the water assended to the
second story, occupied by the defendants, and in consequence
overflowed. There was a stop-cock on the floor occupied by the
defendants, who, not being apprised of any danger, never shut it
off, relying upon the custom of the Crucible Co. of shutting the
water off in the basement. If the stop-cock on the defendants'
floor had been shut off, the overflow would not have occurred.
*Held*, that these facts did not *per se* prove negligence on the part
of the defendants, and they were not liable for the overflow.
The reasons stated.

The action was to recover damages for injuries done
to certain goods in which the plaintiffs had a special pro-
perty. The damage was caused by an overflow of water
said to have been caused by the negligence of the defend-
ants.

The facts are substantially these : The plaintiffs
occupied the sub-cellar of the building No. 68 Reade
street, in the City of New York, for the storage of merino
and woolen undershirts and drawers which were consigned

to them for sale on commission, and on which they had made advances. The basement and ground floor were occupied by the Dixon Crucible Co., who were the plaintiffs' lessors. The defendants, with two of their tenants (Mr. Hill and Dabney & Co.), occupied the second floor directly over the store occupied by the Crucible Co.

There were water fixtures on the floor occupied by the defendants, used by them and their two tenants, consisting of a tank over the water-closet, supplying water to the closet and wash-basin and urinal, and there was a pump used for filling the tank, and a pipe, coming up from below, supplying water through the pump to the tank. There was an overflow pipe, commonly called a waste-pipe, both for use in the water-closet basin and to provide against overflow of the tank in pumping. The fixtures were so arranged that the overflow, in case the tank became full, should run through the pipe into the closet and so off into the waste-water pipe, carrying it into the main street sewer, and the tell-tale pipe was to indicate to the pumper that the tank was full. It was not to carry off the overflow. There was a stop-cock, eighteen or twenty inches above the floor, which intercepts the water before it gets to the pump and which regulates and controls the delivery of water to the second floor.

The entire supply of water to the building was controlled by a stop-cock in the basement occupied by the Crucible Co., which, when turned off, prevented the water from entering any part of the building. It was the custom of this company or its employees every night, at about six o'clock, to shut the water off from the building, so that no water could be obtained on defendants' floor after that hour, and this custom was known to and relied upon by the defendants. There is evidence that on the Saturday evening preceding the injury the employees of the Crucible Co. shut off the water from the building at the close of the business day, about ten minutes before six o'clock, and it does not appear that it

Clarke v. Anderson.

was turned on again before Monday morning, May 21, 1883.

On this same evening, Dabney, & Co. (defendants' tenants), remained on the second floor (where the overflow occurred), after the defendants and their employees had left for the day.

The water arose on Sunday, the 20th of May, 1883, up to the second floor of said premises, filled the tank and overflowed, the waste-pipe, for some reason or other (not clearly established), proving inadequate to carry off the supply.

This overflow damaged the plaintiffs' property to the amount of $1,318.90, for which sum, with interest, the trial judge ordered judgment in favor of the plaintiffs, on the ground of negligence on the part of the defendants, and from this judgment the defendants appeal.

*John H. Parsons*, for appellants.

*W. P. Richardson*, for respondents.

McAdam, Ch. J. – The defendants are not liable for the injury complained of, unless it was caused by their negligence, or in other words, unless the evidence proves that the defendants neglected some duty owing to the plaintiffs, or failed to exercise that care, in the management of the water apparatus on their floor, which an ordinarily prudent man would have observed under like circumstances.

The charge of negligence against the defendants seems to be founded on their omission to turn off the stop-cock on their floor, on the evening preceding the overflow, but this omission, in view of the facts, is not *per se* evidence of negligence. It had never been turned off before by the defendants, nor does it appear that they had any reason to know or believe that unless turned off an overflow was likely to follow. It was with difficulty that the water

required was obtained on the second floor ; it had to be pumped up, and the possibility of overflow was guarded against by the waste pipe which was naturally supposed to be sufficient to carry away all waste water and make an overflow impossible. The defendants did not introduce the water upon their floor, nor did they make any alterations in the pipes They found the fixtures there when they moved in, and they left them as they were, and, as tenants had the right to assume that the pipes and overflow were properly arranged, and were sufficient for the purposes for which they were intended. The defendants are not liable for their defective construction or insufficiency, and negligence in their use as a ground of liability was not established. That the overflow occurred on the defendants' floor is clearly established, but how or from what particular cause is not so readily determined. It may have been caused by the insufficiency or temporary stoppage of the waste-pipe, and the unexpected failure of the Crucible Co., on this occasion, to observe their custom of shutting off the water in the basement. There is proof that the Crucible Co. (the occupant of the basement) shut off the water from the building the night before the overflow, and that it remained shut off until Monday morning ; but this is hardly possible, as the overflow could not have occurred in the meantime, if the company had on this occasion observed this its customary habit. We must assume, therefore, either that the Crucible Company failed on this occasion to observe its usual custom (on which the defendants had previously relied with safety) or that, if it shut off the water, some evil disposed person must have turned it on, and, in consequence, the water, on the following day (Sunday), owing to its great pressure—the factories and large establishments using it during the week being then closed—found its way up to the defendants' floor, ran in the tank and from thence to the waste-pipe, which, being insufficient to carry the water away, overflowed and did the damage. The

Clarke *v.* Anderson.

defendants had never been apprised of any threatened danger from this source, and had not been warned to turn off the stop-cock on their floor, and had up to this time never found it necessary to do so.

We cannot hold that the defendants were, under such circumstances, guilty of negligence, or that they failed to do that which an ordinarily prudent man would have done under like circumstances. The average business man would, we think, have acted as the defendants did, and would have assumed, in the absence of notice to the contrary, that there was no recondite danger. If the defendants on this particular occasion had acted differently from what they had on prior occasions, and had omitted any precaution which they previously been in the habit of observing, and damage had occurred in consequence of the omission, negligence might have been imputed to them ; but to infer negligence on their part in this case is to hold in effect that a tenant, moving into a loft or tenement where there are water fixtures, is liable for any overflow which may happen during the night, even though it happened without his agency. This would practically make the occupants of a tenement insurers to each other for the sufficiency of the water-pipes in their respective portions of the premises. It would require the tenant on each floor to shut off the water on leaving or retiring for the night, to the possible discomfort of the tenants occupying floors above, who might require its use. The law does not go so far. It is satisfied by holding the occupant of each floor liable only for his own acts of omission and commission, and if negligence cannot be established against the paricular occupant sued, the party injured is, like any other plaintiff who fails to make out a cause of action, without remedy against the party he has called upon to respond. There is evidence that the stop-cock on the defendants' floor was intended to stop the water, while the pump, &c., over the closet were undergoing repairs. This is undoubtedly true, but it would have done more ; it

would, if turned off, have prevented the overflow which happened; and if the defendants had been notified that it was necessary to turn the stop-cock on leaving for the day, it might have been negligence on their part if they had failed to do so. But no such notice was given.

In Ross v. Fedden (7 Law R. Q. B. 661) it appeared that the plaintiff occupied, for business purposes, the ground floor and the defendants the second floor of the same house, respectively, as tenants from year to year. There was a water-closet on the defendants' premises to which they alone had access. After their respective premises had been closed on a Saturday evening, water percolated from the water-closet, through the first floor, to the plaintiff's premises and caused damage to his stock in trade. The overflow of the water was owing to the valve of the supply-pipe to the pan having got out of order and failing to close, and the waste-pipe being closed with paper. The defects could not be detected without examination. The court held that, as the defendants did not know of these defects, they were not guilty of negligence and were not liable.

In the case cited, the court said : " Up to Saturday evening there was no reason to suspect that the valve had given way, or was in any danger of giving way, or that anything was wrong with the closet, · and I see no negligence in not guarding against a danger which there is no reason to anticipate." In the same case Judge BLACKBURN said : ". If the defendants had got notice of the state of the valve and pipe, and had done nothing, there might have been ground for the argument that they were liable for the consequences." In this case, as in that, there was no proof that the defendants had any notice of the danger which subsequently developed itself. Another difficulty in the present case is the circumstance before adverted to, that there were two other occupants of the second floor, viz.: Mr. Hill and the firm of Dabney & Co.

Clarke r. Anderson.

(tenants of said defendants). The water apparatus was used in common by these persons, and Dabney & Co. were on the premises on the Saturday preceding the injury, after the defendants had left for the night.

The defendants were not liable for the negligence of their sub-tenants. They had keys, and went in and out independently of the defendants. It was incumbent, therefore, on the plaintiffs to show affirmatively whose act caused the damage, for, in the language of the court of appeals in Harris v. Perry (89 N. Y. 308), "It will not be presumed or guessed. Neither can be held liable for the negligence of the other. There can be no presumption of negligence against either occupant."

If inference, however, is to take the place of proof, it would be just as fair to impute negligence to Dabney & Co., who were on the premises last, as to the defendants, who, with their employees, left for the evening before Dabney & Co. had concluded their labors for the day.

In Moore v. Goelet (7 Bosw. 531; aff'd, 34 N. Y. 527) the court said: "Indeed, if it had appeared that the defenants had exclusive occupation of another part—as might be true of two tenants of a common landlord—but each had a right to use a water-closet and faucet and each had an equal control over the management and care thereof, we are of opinion that if either be sued for damages sustained by another from some carelessness in the use of fixtures, the plaintiff must prove the neglect to be the defendants'. He cannot rest with merely showing his injury and that it was caused by a flow in the night season from a faucet carelessly left open, without showing that it was left by the carelessness of the defendant or his employees. Where two or more have the use of such fixtures in common, under a right to use or occupation held by them jointly, so that the use and the control of the premises is joint, the responsibility for the proper use and care of the fixtures may be joint; so that the liability attaches *prima facie* to each on proof that negligence has

occurred and damage has ensued. But where the right is several, I apprehend that each is responsible only on proof of negligence on his own part, and neither is responsible for that of the other."

Upon the entire case, therefore, we are of opinion that the plaintiffs failed to make out a cause of action, and that the judgement rendered in their favor must be reversed and a new trial ordered, with costs to the appellants to abide the event.

HYATT and HALL, JJ., concur.