By the Court.—Freedman, J.
The plaintiffs sued to recover damages for injury to a stock of paper on their premises, Nos. 16 and 18 Reade street, in the city of New York, which damages they claim were caused by the negligence of the defendant in permitting an overflow of water in a certain closet on the second floor of said buildings. The defendant at the time in question occupied the whole of said second floor as a tenant, and the plaintiffs, as tenants, occupied the first or ground floor and the basement and sub-basement.
At the trial the evidence, on the part of the plaintiffs, established the following facts, viz.: On the morning of April 7, 1887, plaintiffs’ premises were found wet and flooded. The ceiling over the ground floor was dripping *437 with water, and part of the ceiling had fallen down. The water had run over the floor and down into the basement and sub-basement, and materially damaged plaintiffs’ stock. The defendant’s water closet on the second floor was supplied with water from a tank over the closet. The pipe which fed this tank was fitted with a ball-cock which worked automatically. The cock remained open, permitting the water to flow into the tank, until it reached a certain height in the tank, when the floating ball closed the cock and prevented any further flow of water On the morning in question it was found that a rubber hose had been fitted to the end of this pipe and extended over across the top of the tank beyond its outer edge, with a tin pipe attached to the end of the rubber hose. No water could flow into the tank while this extension tube was attached in the way it was found. The tank was empty, but the floor of the closet was wet. There was no water flowing from the tube when this discovery was made.
But it was also shown that the plaintiffs had the control of the stop-cock in the basement whereby the entire water supply for the buildings could be cut off. They had expressly covenanted with the owner of the premises “ to cause the Croton water to be shut off from the lofts of said buildings each night before leaving the premises.” This provision was contained in a written lease under seal made in 1875, which was renewed from time to time, and was in force at the time of the occurrence referred to. Plaintiffs usually did shut off the water during the cold weather, but they could not tell how many times they had not done so during the months of February, March and April, 1887. If the water had been shut off at the stop-cock in the basement no water could have ascended to any of the floors above the basement. The water did not usually run above the' first floor of the premises except during the night.
Upon this state of facts the trial judge, on defendant’s motion, dismissed the complaint on the ground that, *438 even if the defendant was negligent, the plaintiffs, by failing to exercise the power which they possessed to shut off the water, and which they were under contract with the owner to exercise, although' that contract might not enure to the benefit of the defendant, if the defendant had been injured by reason of the water not having been shut off, were guilty of contributory negligence.
The ruling was correct under the decision of Moore v. Goedel, 34 N. Y. 527; affirming 7 Bosw. 591. True, that case involved, as an additional point, the insufficiency of the evidence to establish negligence in the particular defendants sued. But the point now under consideration was also involved, and it was held, both by this court and the Court of Appeals, that an undertaking by one of the plaintiffs to take charge of a water faucet in the cellar of the building occupied by them, and to see that the water was shut off at night, precluded the plaintiffs from recovering damages from tenants of an upper floor for injury caused by overflow during the night; and that plaintiffs’ failure to shut off the water was negligence which contributed to, and was a proximate, not a remote, cause of the injury. The undertaking referred to was a verbal promise made by one of the plaintiffs to Cromwell & Co., who were the landlords of the defendants. No promise was made by the plaintiffs to the defendants, and it nowhere appeared that the defendants in any way knew of plaintiffs’ promise to Cromwell & Co. Nevertheless it was held that plaintiffs’ failure to keep their promise was available to the defendants when sued.
The facts in the case at bar are just as strongly, if not more so, in favor of the defense as they were in Moore v. Goedel. In the latter case the promise, as stated,. was verbal and made between co-tenants, but not between the plaintiffs and the defendants sued. In the x present case the plaintiffs covenanted in writing under seal with the common landlord of the premises “ to cause the Croton water to be shut off from the lofts of *439 said building each night before leaving the premises.” Under this covenant the plaintiffs assumed the duty to cause the water to be shut off every night not only from defendants’ loft, but from all the lofts. Under the doctrine of Moore v. Goedel it must therefore be held, that the owner and all his tenants were entitled to the protection of this covenant, at least so far as any claim for damages by the plaintiffs arising from their violation of it is concerned. This is not a case in which the defendant seeks to gain a benefit from the enforcement of a contract to which it is a stranger, but a certain defense is resorted to against a claim for damages based by the plaintiffs upon the affirmation which must be proved by them, that they themselves were not at fault in the matter.
The judgment should be affirmed with costs.
Sedgwick, Ch. J., and Truax, J., concurred.