57 371
40ap599

# HERBERT M. TAYLOR, APPELLANT, *v.* THE TOWN OF CONSTABLE, RESPONDENT.

*Overseer of highways — duty of, to repair a bridge — contributory negligence — reliance upon the judgment of the commissioner of highways.*

An overseer was directed by a commissioner of highways to make some repairs to a bridge which was found to have, among other things, a rotten brace in it. Timber was gotten out for the purpose of repairing the brace and a time was appointed for the doing of the work. The execution of this work was, however, postponed, and in the interval the overseer, in driving over the bridge with a loaded wagon, was injured by the falling of the bridge. This fall of the bridge, however, was occasioned by a stringer breaking before the rotten brace gave way, which was apparently the cause of such brace giving way.

A certain amount of repairs had been made to this bridge before the accident and the commissioner had stated to the overseer, who worked by the day for the highway commissioner, that he thought it was safe to draw potatoes across and to travel across. It also appeared that a number of loaded wagons had crossed the bridge without any accident happening.

*Held,* that it was not the duty of the plaintiff, as overseer, to keep this bridge in repair.

That as he was not a contractor with the commissioner to make repairs, but only an employee working by the day and paid by the day, the plaintiff had assumed no duty in respect to the repairs.

That as the first cause of the accident was the breaking of the stringer, and it was not shown that the plaintiff had knowledge of its rotten condition, although he knew of the condition of the brace, and as the commissioner had stated that he thought it was safe to pass over the bridge, and loaded wagons had crossed it, that a question was presented for the jury whether, under these circumstances, the plaintiff was negligent.

That when the commissioner of highways exercised his judgment in regard to the safety of the bridge under his charge and left it open for public travel, he practically asserted to the public that the bridge was safe and a traveler had a right, in passing over it, to largely rely on this opinion of the officer entrusted with the duty of its repair.

APPEAL by the plaintiff Herbert M. Taylor from a judgment of the Supreme Court, entered in the office of the clerk of the county of Franklin, on the 18th day of March, 1890, in favor of the defendant, dismissing the plaintiff's complaint, with costs, and from an order of said court entered in said office on the same day non-suiting the plaintiff and dismissing his complaint, and refusing to submit to the jury upon the trial of the action the several questions

requested by the plaintiff to be submitted by the court to the jury for its determination.

*John P. Kellas*, for the appellant.

*John P. Badger*, for the respondent.

LEARNED, P. J. :

This is an appeal from a judgment on a nonsuit at circuit. The action was brought to recover damages for injuries caused to plaintiff by reason of the fall of one of defendant's bridges, by means of which he was thrown into the water. There was no doubt, on the proof given at the trial, of the defective condition of the bridge; of its fall and of plaintiff's injury. The defendant insisted that the plaintiff was guilty of contributory negligence; and upon that ground the nonsuit was granted.

The plaintiff was overseer of the highways of the district in which the bridge was. There were two spans to the bridge; one only, the east, is over the river and is the one in question. It was built with five stringers, each fifty-four feet long, extending over the river, on which rest the planks. The stringers were a little less than three feet apart, from outside to outside; the planks twelve feet long. On each of the outside stringers was a brace made of three sticks; two slanting and the top stick horizontal, thus forming a truss; a rod running down where the slanting stick joined the horizontal.

About a month before the accident plaintiff and Mr. Callahan, commissioner of highways, and one Badore, met at the bridge and examined it. Two or three weeks before the accident they straightened up the brace on the south side of this east span, which had leaned over for a year; and decided that the north brace was so rotten that there must be a new one. Timber was gotten for that purpose for the horizontal beam and one of the slanting pieces. They made an appointment for the next Tuesday to put in the north brace. The commissioner told them if he was not there to go to work. Tuesday it snowed and stormed so no one could work. This was two weeks before the accident. Plaintiff did nothing to the bridge up to the time of the accident.

Before they repaired it plaintiff had frequently said that the bridge was rotten and in danger of falling. Plaintiff's wife, four or

five weeks before the accident, had cautioned him about going across.

After they had repaired it, as above stated, Mr. Callahan said he thought they had fixed it so that it was safe to draw potatoes across and to travel across. He examined the stringers and said it was safe to cross. Plaintiff worked by the day for Callahan.

Mr. Spencer drew potatoes over the bridge nearly every day after the bridge was thus repaired. He drew with a double wagon and a team. The potatoes weighed about 3,500 pounds.

The plaintiff drove across the morning of the accident, and then loaded a thrashing separator on his wagon, weighing about 1,300 pounds. On returning with this load the bridge broke.

Mr. Preno was riding with plaintiff. He had previously driven over with a wagon and double team and thirty-five bushels of potatoes. At the time of the accident he says the north stringer broke first; when that went down about nine inches the brace on the north side broke in the middle. He says people crossed on the bridge every day.

We do not see that, as overseer, the plaintiff was bound to keep this bridge in repair. (1 R. S., m. p. 503, § 6 ; *Bartlett* v. *Crozier*, 17 Johns., 447 ; *Day* v. *Day*, 94 N. Y., 153, 159.)

The defendant urges that, by the arrangement made with the commissioner of highways, the plaintiff had agreed to repair the bridge ; hence, that he cannot recover for injuries occasioned by his neglect to do so. (*Sterger* v. *Van Siclen*, 28 N. Y. St. Rep., 627 ; *Walker* v. *Globe Man. and Imp. Co*, 21 id., 470.)

It appears from the evidence that plaintiff was not a contractor who had agreed with the commissioner to make these repairs. He was only an employee working by the day and paid by the day. The commissioner had agreed to meet plaintiff and Badore on Tuesday; and had told them to go on with the work if he were not there, and if the day were so that they could work. It proved to be too stormy and the commissioner did not come. The plaintiff had, therefore, assumed no duty. The whole duty to repair was with the commissioner.

Again, it is urged that plaintiff knew of the unsafe condition of the bridge and was, therefore, negligent. It is said his wife had cautioned him. That was some three months before the accident. And she says that her remark referred to the part of the bridge

where there were no guards to keep a horse from going over if frightened; that after the bridge was repaired nothing was said about its being dangerous.

As to plaintiff's own knowledge. There is evidence tending to show that the beginning of the accident was the breaking of the north stringer, and that then stringer after stringer followed. It is not shown that the plaintiff knew of the rotten condition of the stringers. He says that when he was working at the bridge with the commissioner he saw nothing to indicate that they were unsound. It was the north brace which was to have been repaired on the appointed Tuesday; and there is evidence that, when the accident happened, this brace did not break until after the stringer had broken and sunk down. So that it might have been found that the immediate cause of the accident was the breaking of the stringer.

Furthermore, there were circumstances tending to show to plaintiff that, for the present, it was safe to cross the bridge. After the repairing the commissioner said to him he "thought we had fixed it so it was safe to draw potatoes across and to travel across." And teams drawing potatoes, fifty bushels or thereabouts, had crossed thereafter from day to day. These loads of potatoes weighed about 3,500 pounds — much more than the load which plaintiff had on his wagon. Whether, under all the circumstances, the plaintiff was negligent was a question for the jury. In *Bullock* v. *Mayor*, etc. (99 N. Y., 654), where a sidewalk was known to plaintiff to be unsafe, it was held that she had a right to use it and that the question of her negligence was for the jury. So in *Link* v. *Brunswick* (10 N. Y. State Rep., 642), the plaintiff's property was injured by the fall of a bridge over which he was driving. A nonsuit for contributory negligence was held improper. The court remarked: "To say that a bridge was dangerous would not necessarily imply that there was probability of its immediate fall."

"Negligence is a relative term and depends on the degree of care necessary in a given case." (*McGuire* v. *Spence*, 91 N Y., 305.) Negligence is the doing what a prudent man would not do. And when the question is one of the negligence of the plaintiff it is generally for the jury to decide. The argument of the defendant is, that if the defendant was negligent in not repairing, then that the plaintiff had the same knowledge with the commissioner and

was, therefore, negligent in crossing. But we think that argument is not sound. The responsibility is with the commissioner. He must exercise his judgment and see that the bridge is safe. And when he leaves the bridge open for public travel, he practically asserts to the public that the bridge is safe. The traveler has a right largely to rely on this opinion of the officer entrusted with such an important duty. In the present case the plaintiff had not only this assertion of safety by the act of the commissioner, but he had also the express statement made to him at the time of the repairing.

The decay in such a structure is gradual. It continues to bear the ordinary weight of traffic till at last the decay reaches such a point that the structure falls. It is not the duty of the commissioner to see how near to that moment of breaking he can keep up the structure. On the other hand, the traveler who is almost under the necessity of crossing the bridge, though he may see that it is old and shows some marks of decay, may certainly suppose that the commissioner has done his duty.

On the whole, we are of opinion that it was for the jury to decide whether, under all the circumstances, the plaintiff was negligent.

The judgment must be reversed, new trial granted, costs to abide event.

LANDON and MAYHAM, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.